Kevin WHITE, d/b/a K.W. Communications, Plaintiff–Respondent,

v.

The CURATORS OF THE UNIVERSITY OF MISSOURI, d/b/a University of Missouri–Rolla, Defendants–Appellants.

No. 20392.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 20, 1996.

Robert L. Ross, General Counsel, Kelly Mescher, University of Missouri, Columbia, for defendants-appellants.

John D. Beger, Rolla, for plaintiff-respondent.

GARRISON, Judge.

A jury returned a verdict in the amount of $141,877.84 in favor of Kevin White, d/b/a K.W. Communications ("White"), on his claim for breach of contract against the Curators of the University of Missouri (the "University"). On this appeal from the judgment entered on that verdict, the University contends that the trial court erred in giving a verdict-directing instruction submitted by White, and in not giving its proposed affirmative defense instruction. We affirm.

In February, 1991, the University requested bids for telecommunications wiring services at its Rolla campus. This work included "pulling" wires which could be used for computer networking. Based on his bid of $30 per hour, White was awarded a one-year contract which included the option for the University to extend it for two additional one-year periods. White initially commenced working on the project by himself, with the occasional assistance of a University employee. Because University personnel were not always available, Jo Ann Light, the director of telecommunications services at the Rolla campus, authorized White in April, 1992 to hire an additional worker and bill $15 per hour for his services.

In April, 1992, the University also decided it wanted the "networking" of the Rolla campus completed in one year, which would require additional work of the type being done by White. Mr. Dearth, the director of computing and information services at the Rolla campus, sent a memo to Ms. Light and her supervisor, Randall Stoll, the director of purchasing, suggesting that perhaps White could "gear up more" to accomplish the expanded work load. As a result of a meeting with Dearth in April, White was authorized to do the expanded work and, as expected by the University, he hired three additional workers that summer.

Although the University's policy was to request bids on the purchase of services exceeding $5,000, it did not do so with reference to the expanded work, even though it knew the cost of the work would exceed that amount. Instead, Mr. Stoll testified that the additional work was treated as a part of

White's original contract and the purchase orders by which it was implemented.[1]

After hiring the additional workers, White billed the University at the rate of $45 per hour for a two-man crew. He testified that this billing was a mistake because he had been used to billing that amount for himself and the original helper he hired in April ($30 for White, and $15 for his first helper). The invoices billed in that manner were paid by the University until October, 1992, when Ms. Light told White that she would not authorize payment of his latest invoice because he could only charge $30 per hour for his own time and $15 for his helpers. Although White testified that he objected, he revised the invoice to reflect those billing rates. White testified that he changed the billing rate on that invoice and on future ones because he felt that he had to in order to continue to work under the contract and meet his payrolls.

White continued to bill at these rates until the fall of 1993 when he changed the invoice rate to $30 per hour for all workmen. Four of those invoices were paid without objection, and on December 6, 1993, White wrote to Mr. Stoll and enclosed an invoice recalculating the amounts owing for all of the work done in 1993, based on hourly rates of $30 for all of the workmen, and requesting payment for the difference between those rates and the amounts previously paid. He also informed Stoll that he would be forwarding a like invoice for 1992. Stoll responded that since there was an apparent dispute over the contract, White could continue to work on the project but could not use other workmen. As a result, White laid off his workmen, discontinued his own work on the project, and filed the instant suit.

In its first point on this appeal, the University contends that the trial court erred in giving Instruction No. 5, the verdict-director submitted by White. That instruction, patterned after MAI–3d 26.06, read:

1. The contract was considered by the University as consisting of the request for bids, the successful bid, and purchase orders issued pursuant to it. In the instant case, the University issued purchase orders to White on March 4, 1991,

*INSTRUCTION NO. 5*

Your verdict must be for plaintiff if you believe:

First, plaintiff and defendant entered into an agreement whereby plaintiff agreed to provide telecommunications wiring services on the University of Missouri–Rolla campus and defendant agreed to pay $30.00 per hour for plaintiff and his employees to provide such services, and

Second, plaintiff performed his agreement, and

Third, defendant failed to perform its agreement, and

Fourth, plaintiff was thereby damaged.

The University's contention concerning this instruction, as identified in its point relied on, is that it failed to submit the "disputed question whether the agreement had been modified as to the scope and payment terms." The University describes its position in the argument section of its brief by saying that "the original agreement did not provide for employees of [White], and even if it did, the agreement was modified by the change to the scope of work required by the contract and the change in scope required [White] to hire workers to complete the enlarged scope of work." Finally, it says that the instruction "did not require the jury to determine what agreement was made concerning the amount [the University] was obligated to pay [White] for work performed by [White's] workers after April, 1992 under the expanded contract."

■ "Jury instructions are required to be 'simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts.'" *Graham v. Goodman*, 850 S.W.2d 351, 354 (Mo. banc 1993) (quoting Rule 70.02(a), which is now Rule 70.02(b)). "The goal of MAI is to leave evidentiary detail to the argument of counsel and to submit only the ultimate issues for the jury's resolution by simple and

March 16, 1992, and March 12, 1993, each of which were for a period of one year and referred to the contract rate of $30 per hour for the work performed.

concise instructions." *DeMean v. Ledl,* 796 S.W.2d 415, 421 (Mo.App.S.D.1990).

■ MAI 26.06 is appropriate for the submission of a two-element dispute of (1) what agreement was made and (2) whether that agreement was breached. *Penberthy v. Nancy Transp., Inc.,* 804 S.W.2d 404, 407 (Mo.App.E.D.1991). Where the terms of the agreement are in dispute, the verdict-directing instruction must hypothesize the proponent's version of the agreement actually made, and failure to do so is prejudicial error. *James O'Brien & Assoc, Inc. v. American Sportsman Travel, Inc.,* 819 S.W.2d 62, 64 (Mo.App.E.D.1991).

■ It was White's theory that the 1991 contract covered work performed by him as well as workers employed by him, even after the scope of the work was expanded. He testified that when the University requested that he perform the expanded services, its representatives discussed his need to employ additional workers and that nothing was said about the amount the University would be charged for their services. In fact, he said that he understood that all of those services were to be performed pursuant to the original contract, which provided for compensation at the rate of $30 per hour.

White also presented the testimony of Mr. Stoll who, at the times in question, was in charge of purchasing for the University. Mr. Stoll testified that it was the University's policy to request bids for any acquisition of services above $5,000; that it did not request additional bids when White was authorized to perform the expanded services because he felt that the work to be done was the same, or of a similar nature, as that provided for under the original contract; that he understood White was going to hire additional help to perform the expanded work; and that it was his understanding that the additional workers were performing services which were specified in the original contract.

In the instant case, the issues for determination were: (1) the amount which the parties agreed would be paid as compensation for the work to be performed, and (2) whether the University breached that agreement. There was no dispute about the fact that the basic issue was the amount of compensation which the University was required to pay for the expanded work. Instruction No. 5 required that, in order to return a verdict for White, the jury had to find that the University had agreed to pay $30 per hour for his work as well as that of his employees. As it relates to this appeal, that was the ultimate fact for determination. The failure to find that ultimate fact would have resulted in a verdict for the University. Whether payment for those services was covered by the 1991 agreement or was the subject of another agreement in 1992 was not the ultimate issue for decision.

■ In order to reverse on the grounds of instructional error, the party challenging the instruction must show that the offending instruction misdirected, misled or confused the jury. *Seidel v. Gordon A. Gundaker Real Estate Co.,* 904 S.W.2d 357, 363 (Mo.App. E.D.1995). Reversal for instructional error should not occur unless it is found that the instruction contains an error of substance with substantial potential for prejudicial effect. *DeMean v. Ledl,* 796 S.W.2d at 421. Under these tests, we are unable to conclude that the trial court erred in giving Instruction No. 5. The University's first point is denied.

The University's second point is based on the refusal of the trial court to give its proposed Instruction A, which read:

### INSTRUCTION NO. A

Your verdict must be for defendant if you believe:

First, that plaintiff knew that for the months of August, 1992 through December 1993, he would have been entitled to receive thirty dollars ($30.00) per hour for all the work done by his employees under his original contract;

Second, that defendant believed that the employees were to be paid at a rate of fifteen dollars ($15.00) per hour;

Third, that plaintiff knew defendant was paying plaintiff's employees upon that belief; and,

Fourth, that plaintiff remained silent about his claim for payment to his employees at thirty dollars ($30.00) per hour.

■ Instruction A is a not-in-MAI instruction, which the University says is based on the theory of estoppel and was patterned after one given in *Rodgers v. Seidlitz Paint & Varnish Co.,* 404 S.W.2d 191, 195 (Mo. 1966). In *Rodgers,* however, there was no issue raised about the propriety of the instruction given, and the Missouri Supreme Court specifically said that it was not passing on that issue. *Id.* at 197. Rather, the issue decided there was whether the plaintiff was estopped as a matter of law, and whether the trial court correctly entered a judgment for defendant notwithstanding the verdict.

Here, the University contends that Instruction A should have been given because it was supported by the evidence. It is true that "a party is entitled to an instruction upon any theory supported by the evidence." *Egelhoff v. Holt,* 875 S.W.2d 543, 548 (Mo. banc 1994) (quoting *Vandergriff v. Missouri Pacific R.R.,* 769 S.W.2d 99, 104 (Mo. banc 1989)). One of the requirements of a not-in-MAI instruction, however, is that it follow the substantive law. *Kauzlarich v. Atchison, Topeka, & Santa Fe Ry. Co.,* 910 S.W.2d 254, 260 (Mo. banc 1995). Such an instruction must be a correct statement of law. *Spring v. Kansas City Area Transp. Auth.,* 873 S.W.2d 224, 226 (Mo. banc 1994).

The University, in citing *Rodgers v. Seidlitz Paint & Varnish Co.,* 404 S.W.2d at 195, acknowledges that the elements of estoppel are: (1) an admission, statement, or act inconsistent with the claim afterwards asserted and sued on; (2) action by the other party on the faith of such admission, statement or act; and (3) injury to such other party, resulting from allowing the first party to contradict or repudiate such admission, statement or act.

■ White argues, however, that the trial court did not err in refusing to give the instruction in question because it did not require a finding of all of the elements of estoppel. In particular, he correctly points out that the instruction does not require a finding of the third element, i.e., injury resulting from allowing the first party to con-

tradict or repudiate the admission, statement or act. Injury is one of the elements which should be included in an instruction submitting the issue of estoppel. *See American Mortgage Inv. Co. v. Hardin–Stockton Corp.,* 671 S.W.2d 283, 288–89 (Mo.App.W.D.1984).

We also note, as argued by White, that Instruction A would require a finding that he knew from August, 1992 through December, 1993 that he would have been entitled to be paid $30 per hour for the work of his employees under the original contract. Rather than requiring a finding that White made an admission, made a statement, or performed an act inconsistent with his claim for $30 per hour for the work of his employees, as a foundation to the claim of estoppel, this instruction in essence would have required a finding that White knew that his present claim was valid. The theory pursued by the University was that the billing for lesser amounts was inconsistent with the present claim. The instruction, however, does not require a finding of such inconsistent conduct. It is true that it is not error for an instruction to assume an uncontroverted fact. *Joiner v. Auto–Owners Mut. Ins. Co.,* 891 S.W.2d 479, 484 (Mo.App.W.D.1994). The University, however, does not argue here that this missing element was, in fact, uncontroverted. Our review of the record indicates that the undisputed evidence was that White submitted invoices at the $30 per hour rate in November, 1993 which were paid by the University. Because of this fact alone, proposed Instruction A, which appears to be premised on consistent conduct from August, 1992 through December, 1993, was not supported by the evidence.

Under these facts, the trial court did not err in refusing Instruction A. Point two is denied.

The judgment is affirmed.

BARNEY, P.J., and PREWITT, J., concur.