STATE of Missouri, ex rel. MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Appellant,

v.

John DALE, et al., Respondents.

No. SD 29498.

Missouri Court of Appeals,
Southern District,
Division One.

March 23, 2010.

Motion for Rehearing or Transfer Denied
April 14, 2010.

Application for Transfer Denied
May 25, 2010.

Michael L. Jackson, Sr. Asst. Counsel, John W. Koenig, Jr., Regional Counsel and Rich Tiemeyer, Chief Counsel, Sikeston, for Appellant.

Christopher J. Swatosh, Ava, for Respondents.

ROBERT S. BARNEY, Judge.

State of Missouri ex rel. Missouri Highway and Transportation Commission ("Appellant") appeals the "Judgment on Jury Verdict for More than Commissioner's Award" which awarded John and Marsha Dale ("Respondents") $445,643.20 for their damages in relation to a condemnation action filed against them by Appellant. Appellant asserts three points relied on premised on instructional error due to the trial court's rejection of its proffered Instruction No. 6 which was a modified version of Missouri Approved Instruction ("MAI")[1] 9.02. We affirm the judgment of the trial court.

The record reveals Respondents were the owners of a 10.8 acre tract of land in Howell County, Missouri, upon which they operated a sawmill. This property is located on U.S. Route 60 where that highway intersects with Route RA and Respondents have always utilized Route RA to access their property. In order to facilitate highway improvements to U.S. Route 60, Appellant condemned 3.44 acres of Respondents' property along its northern edge.[2] During the course of these improvements it was discovered that Respondents' property line did not actually extend to the borders of Route RA such that they had no legal means of ingress and egress to their property.[3] On November 21, 2006, Respondents filed a "Notice of Exceptions to the Report of Commissioners and Request for Jury Trial."[4]

A jury trial was held on October 1 and 2, 2008. A great deal of evidence was adduced; however, only two witnesses testified to the value of Respondents' property and concomitant damages relating to the condemnation by Appellant.

Jack Blaylock ("Mr. Blaylock"), a certified property appraiser, appeared on behalf of Respondents. He testified that, utilizing the cost less depreciation approach to appraisal, he determined that prior to the taking Respondents' property was worth $695,450.00, an amount which included $102,000.00 for fixtures and $108,900.00 for the value of "the log yard." He related that after the condemnation, he valued Respondents' property at $139,300.00 such that Respondents were damaged in the amount of $556,150.00 as a result of the taking by Appellant. He related he did not use the income capitalization approach to appraisal and specifically testified that it was not applicable in cases such as the present matter, as the approach only applied to rental property. He further related he did not employ the cost to cure method because it was not applicable.

William Craig ("Mr. Craig"), a certified property appraiser who appeared on behalf of Appellant, testified that using the cost less depreciation method of appraisal and the sales comparison approach to appraisal he determined Respondents were damaged in the amount of $138,000.00. As

1. References to MAI are to the July 1, 2008, revision, unless otherwise stated.

2. The "Report of Commissioners" filed in relation to the condemnation determined Respondents were entitled to $50,320.00 "as net damages for the appropriation . . ." of their property by Appellant.

3. Prior to condemnation of the strip of land bordering U.S. Route 60 Respondents had a legal right to petition for a permit from Appellant in order to access U.S. Route 60 from their property; however, after condemnation they lost such a right.

4. The actual exceptions filed by Respondents were not provided to this Court by either party in this matter.

with Mr. Blaylock, Mr. Craig declined to use the capitalization of income approach as he too believed it was not applicable to the present matter. Unlike Mr. Blaylock, Mr. Craig included a cost to cure approach in his determination to take into account the cost for Respondents to legally obtain a way of necessity to access their property.

At the instruction conference in this matter, Respondent proffered Instruction No. 6 which was verbatim from MAI 9.02. This instruction set out that:

> [y]ou must award [Respondents] such sum as you believe was the difference between the fair market value of the entire property immediately before the taking on November 15, 2006, and the fair market value of the remaining property immediately after the taking. In determining the fair market value of [Respondents'] property, you may consider evidence of the value of the property including comparable sales, capitalization of income, replacement cost less depreciation, the highest and best use to which the property reasonably may be applied or adapted, the value of the property if freely sold on the open market, and generally accepted appraisal practices. You may give such evidence the weight and credibility you believe are appropriate under the circumstances.

Appellant then proffered its modified version of Instruction No. 6, which omitted the phrase "capitalization of income." Otherwise, Appellant's proffered instruction was identical to that offered by Respondents' Instruction No. 6, referencing MAI 9.02.

Appellant objected to Respondents' proposed instruction for several reasons: 1) that because there was no evidence at trial relating to the capitalization of income approach the non-modified instruction proposed by Respondents necessarily instructed the jury to consider matters which were not in evidence; 2) that Respondents' proposed instruction "creates a roving commission for the jury to include a[n] income approach to say they can consider it when there's no evidence of it;" 3) that in an unmodified form, MAI 9.02 does not comply with sections 523.060 and 523.001(1) upon which it is based;[5] and 4) that the unmodified version of MAI 9.02 improperly allowed consideration of the income capitalization approach in a "partial takings" case.

The trial court rejected Appellant's proposed, modified instruction and submitted Respondents' Instruction No. 6 to the jury, which directly mirrored MAI 9.02. It determined that "with a minimal amount of instruction the jury can be told and will understand what the evidence has been presented so far regarding the three dif-

5. Section 523.060 sets out:

1. Any plaintiff or defendant, individual or corporate, shall have the right of trial by jury of twelve persons, if either party file exceptions to the award of commissioners in any condemnation case.

2. Such jury shall use the definition of fair market value provided for in subdivision (1) of section 523.001.

Section 523.001(1) defines fair market value as

the value of the property taken after considering comparable sales in the area, capitalization of income, and replacement cost less depreciation, singularly or in combination, as appropriate, and additionally considering the value of the property based upon its highest and best use, using generally accepted appraisal practices. If less than the entire property is taken, fair market value shall mean the difference between the fair market value of the entire property immediately prior to the taking and the fair market value of the remaining or burdened property immediately after the taking

. . . .

All statutory references are to RSMo Cum. Supp.2006.

ferent approaches," and concluded the instruction proposed by Respondents would not "confuse the jury."

At the close of the evidence, the jury returned a verdict in favor of Respondents in the amount of $450,000.00. Subsequent to the denial of timely after-trial motions, this appeal by Appellant followed.

■■■ In his first point relied on, Appellant maintains the trial court erred in giving Instruction No. 6 to the jury "because Instruction Number 6 was not supported by the evidence in that [it] directed the jury that they could consider, and the jury must therefore be assumed to have considered, capitalization of income in arriving at their damage calculation. . . ." It further asserts that because "there was no evidence of the use of the capitalization of income approach in evidence," the trial court erred by "allowing the jury to speculate on damages to the actual and presumed prejudice of Appellant."[6] In its second point, Appellant maintains the trial court erred in giving the MAI compliant Instruction No. 6 because it "did not contain an accurate statement of substantive law in that Instruction No. 6 did not comply with the provisions of [sections] 523.060 and 523.001(1). . . ." In its third point relied on, Appellant asserts the trial court erred in refusing to give its proffered Instruction No. 6, which was modified from MAI 9.02,

> because the proposed modification of MAI 9.02 was necessary to fairly submit the issues in the case in that Appellant's modification of MAI 9.02 would have removed capitalization of income from

consideration by the jury in accordance with the provisions of [section] 523.001(1) . . . and in accordance with the evidence in the case.

As all three points are interrelated, they shall be addressed conjunctively.

■■■ "An instruction will be given or refused by the trial court according to the law and the evidence in the case." *Eckerd v. Country Mut. Ins. Co.*, 289 S.W.3d 738, 746 (Mo.App.2009). "We review the evidence in the light most favorable to the submission of the instruction." *Id.* This Court reviews "the trial court's submission of a jury instruction . . . de novo." *Rinehart v. Shelter Gen. Ins. Co.*, 261 S.W.3d 583, 593 (Mo.App.2008); *see Gumpanberger v. Jakob*, 241 S.W.3d 843, 846 (Mo.App. 2007). "The court will determine if the instruction is supported by substantial evidence by viewing the evidence in a light most favorable to the instruction and disregard contrary evidence." *Syn, Inc. v. Beebe*, 200 S.W.3d 122, 128 (Mo.App.2006). A new trial is warranted " 'only if the offending instruction misdirected, misled, or confused the jury, resulting in prejudicial error.' " *Rinehart*, 261 S.W.3d at 593 (quoting *Kopp v. Home Furnishing Ctr., LLC.*, 210 S.W.3d 319, 328 (Mo.App.2006)); *see McBryde v. Ritenour School Dist.*, 207 S.W.3d 162, 168 (Mo.App.2006). Stated another way, "[r]eversal for instructional error should not occur unless it is found that the instruction contains an error of substance with substantial potential for prejudicial effect." *White v. Curators of*

---

**6.** Additionally, in the argument portion of Appellant's brief it asserts the instruction given to the jury resulted in a "roving commission" which allowed it to "speculate as to what it might take into account in considering capitalization of income." This argument was not included in Appellant's point relied on and will not be discussed in this opinion. " 'Er-

rors raised for the first time in the argument portion of the brief and that are not raised in the point relied on need not be considered by this Court.' " *Woods v. Friendly Ford, Inc.*, 248 S.W.3d 665, 676 n. 11 (Mo.App.2008) (quoting *Pearman v. Dep't of Social Srvs.*, 48 S.W.3d 54, 55 (Mo.App.2001)).

*Univ. of Missouri,* 937 S.W.2d 366, 369 (Mo.App.1996).

 Rule 70.02 governs instructions to juries in civil cases.[7] *Criswell v. Short,* 70 S.W.3d 592, 594 (Mo.App.2002). Rule 70.02(a) sets out that "[a]ll instructions ... shall be given or refused by the court according to the law and the evidence in the case." Rule 70.02(b) requires that

> [w]henever [MAI] contains an instruction applicable in a particular case that the appropriate party requests or the court decides to submit, such instruction shall be given to the exclusion of any other instructions on the same subject. Where an MAI must be modified to fairly submit the issues in a particular case, or where there is no applicable MAI so that an instruction not in MAI must be given, then such modifications or such instructions shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts.

*See Clark v. Missouri & Northern Arkansas R.R. Co.,* 157 S.W.3d 665, 671 (Mo.App. 2004). "Thus, 'it is well settled that when a MAI instruction is applicable, its use is mandatory.'" *Id.* (quoting *Bueche v. Kansas City,* 492 S.W.2d 835, 840 (Mo. banc 1973)). The rationale for this requirement is that " 'to make this system work, and preserve its integrity and very existence, we must insist that *mandatory directions be followed* and that the pattern instructions be used as written.'" *Id.* (quoting *Davis v. St. Louis Southwestern R.R. Co.,* 444 S.W.2d 485, 489 (Mo.1969)). Further, the MAI "has long warned [in] its Comment titled 'How To Use This Book'" that

> [y]ou may have the ability to improve an instruction in MAI but you do not have the authority to do it. Do not do it. The use of a provided MAI is mandato-

ry. If you think the change of a word or phrase will make it a better instruction, do not do it. You will be falling into error if you do.

*Clark,* 157 S.W.3d at 672–73 (quoting MAI at XLIX). On the other hand, Rule 70.02(e) "provides for modification of an existing MAI or drafting of a not-in-MAI instruction. The test of a modified MAI or not-in-MAI instruction is whether it follows the substantive law and can be readily understood by the jury." *Smith v. Kovac,* 927 S.W.2d 493, 497 (Mo.App.1996). If a non-MAI instruction is proffered, the party offering the non-approved instruction "must prove that the MAI instructions submitted to the jury misstate the law." *McBryde,* 207 S.W.3d at 168. "When there is no applicable MAI instruction, a non-MAI instruction may be given if it conforms to the requirements of Rule 70.02 in that it is simple, brief, impartial and free from argument." *Id.* at 169. Rule 70.02(c) states that "[t]he giving of an instruction in violation of the provisions of this Rule 70.02 shall constitute error, its prejudicial effect to be judicially determined, provided that objection has been timely made pursuant to Rule 70.03."

 Here, MAI 9.02 was clearly applicable and was precisely mirrored in Respondents' Instruction No. 6 given by the trial court. The trial court was correct in giving it without modification. The given jury instruction referenced numerous possible valid appraisal approaches based on the definition of fair market value as set out in sections 523.001(1) and 523.060. Based on the evidence presented, the jury could determine from expert testimony the fair market value of the property taken by Appellant.

Mr. Blaylock testified on behalf of Respondents that he reached his measure of

7. All rule references are to Missouri Court Rules (2008).

damages by utilizing the replacement cost less depreciation method of appraisal in determining fair market value, and Respondents' attorney focused on this approach in his closing argument. Appellant's expert, Mr. Craig, testified that he reached his measure of damages by using the cost less depreciation and sales comparison approaches in determining fair market value, and these were the approaches relied upon by Appellant's attorney in his closing argument. There was evidence from both Mr. Craig and Mr. Blaylock that the capitalization of income approach was not relevant under the factual pattern of this case. Neither side argued in closing argument that the irrelevant capitalization of income method should be considered by the jury in making its decision. Indeed, the trial court permitted the jury to view both sets of appraisals during their deliberation.

Additionally, while the Notes on Use for MAI 9.02 provide for limited modification, the Notes make no provision for modification or deletion of the term "capitalization of income."[8] As already stated, there is a plethora of law which states that instructions should not be unnecessarily modified and trial courts should utilize MAI whenever possible. *Syn*, 200 S.W.3d at 128–29; *Clark*, 157 S.W.3d at 671. In fact, the giving a non-MAI instruction instead of an applicable MAI instruction is presumed to be reversible error. *See Kansas City v. Habelitz*, 857 S.W.2d 299, 303 (Mo.App. 1993).

Additionally, Appellant argues that the fact that the jury sent a question to the trial court during deliberations is evidence that it was confused by Instruction No. 6 such that there was prejudice. The record shows that during deliberations the jury sent a written note to the trial court inquiring "if a larger amount can be awarded than the top amount" and the trial court responded by stating "the jurors must be guided by the facts and evidence submitted and the instructions provided by the court." We are not persuaded that there was prejudice based on this innocuous question. Further, it should be noted that there was evidence of damages presented ranging from $138,000.00 to $556,150.00 such that the jury's award of $450,000.00 was within that range of values. *See State ex rel. Missouri Hwy. and Transp. Comm'n v. Meramec Valley Elevator, Inc.*, 782 S.W.2d 642, 646 (Mo.App.1989). The jury's verdict was supported by competent and substantial evidence. *Id.* Appellant has failed to show the trial court erred in rejecting its proffered, modified jury instruction by instructing the jury in conformity with MAI 9.02. Points I, II, and III are denied.

The judgment of the trial court is affirmed.

BATES, P.J., and BURRELL, J., Concur.

---

8. Compare MAI 17.02 (2002 Sixth Ed.): "Verdict Directing—Multiple Negligent Acts Submitted." In its Notes on Use 2, MAI 17.02 expressly sets out that "[t]his instruction submits three improper acts in the disjunctive. . . . As is the case with all disjunctive submissions, there must be sufficient evidence to support all of the improper acts or the instruction will be erroneous." Unlike MAI 17.02, the Notes on Use in MAI 9.02 provide for no such disjunctive submission.