Kelcee Jean BLUNKALL, Individually, and Gavin Heath Blunkall and Hannah Audree Blunkall, Minors, by Court Appointed Guardian and Conservator Rhonda Atkins, Plaintiffs–Appellants,

v.

HEAVY AND SPECIALIZED HAULERS, INC., and CWF Wood Products, Inc., Defendants–Respondents,

and

Missouri Highways and Transportation Commission, Defendant.

No. SD 31526.

Missouri Court of Appeals, Southern District, Division One.

March 25, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 15, 2013.

Application for Transfer Denied May 28, 2013.

H. Lynn Henry, West Plains, MO, for appellants.

Christopher P. Leritz, St. Louis, MO, for respondent CWF.

Daniel T. Rabbitt, Jr., St. Louis, MO, for respondent Heavy Haulers.

WILLIAM W. FRANCIS, JR., J.

Kelcee Blunkall, individually, and Gavin and Hannah Blunkall, minors, by court appointed Guardian and Conservator Rhonda Atkins (collectively the "Blunkalls"), filed suit against Heavy and Specialized Haulers, Inc. ("HSH"), CWF Wood Products, Inc. ("CWF"), and Missouri Highways and Transportation Commission ("MHTC") for the death of their parents following an automobile collision. The jury returned a verdict for the Blunkalls against MHTC,[1] but for HSH and CWF as to the remaining claims. This appeal followed. The Blunkalls raise seven points of error. Blunkalls' Point I as to CWF has merit and we reverse and remand for a new trial as to CWF only. All other points are denied.

## Factual and Procedural Background

On September 20, 2007, the pickup truck carrying Timothy and Shelly Blunkall (the "Blunkall parents") was hit head-on by a log truck operated by Keneth Shomaker ("Shomaker").[2] The Blunkall truck was headed west as three vehicles crested a hill headed east: first, a red Plymouth driven by Claudie King ("King"), who died prior to trial; second, a flatbed 18-wheel truck ("HSH flatbed") driven by HSH employee Eugene Toivonen ("Toivonen"); and last, a log truck owned and operated by Shomaker. At the time of the collision, a crew of six inmates from the Licking correctional facility was "weed eating" and picking up trash near the accident location under the supervision of a senior crew worker with the Missouri Department of Transportation. King hit his brakes after cresting the hill when he thought one of the inmates was going to walk out into his path. In response, the HSH flatbed applied its brakes and was hit from behind by the Shomaker log truck. Shomaker then entered the wrong side of the road and hit the Blunkall truck head-on. The Blunkall parents died as a result of the collision.

The Blunkall parents were survived by three children, Kelcee, Gavin and Hannah Blunkall. The Blunkalls filed suit and proceeded to trial against MHTC, HSH and CWF.

During voir dire, Blunkalls' counsel inquired into the venire's beliefs with respect to damages and monetary awards, regarding: (1) feelings on a dollar judgment for the loss of human life; (2) putting a price on life; (3) frivolous lawsuits; (4) religious beliefs on placing monetary value on loss of life; (5) feelings that they could not enter a verdict awarding "X dollars of damages"; (6) damages for loss of companionship between parents and children; (7) damages for loss of comfort; (8) damages for loss of instruction; (9) damages for loss of guidance, counsel, training and support; and (10) feelings about being able

---

1. MHTC filed a notice of appeal (SD31520), which was dismissed after a settlement was reached between the Blunkalls and MHTC. Therefore, MHTC is not a party to this appeal.

2. The record has numerous spellings of "Keneth Shomaker." Based on the trial court transcript, we have determined the correct spelling to be "Keneth Shomaker" and use that spelling throughout this opinion.

to enter a "substantial or a large verdict" maybe "millions of dollars." The trial court allowed Blunkalls' counsel, over objection, to inquire whether there was an amount too large to award regardless of the evidence.

After these lines of inquiry, the following colloquy took place:

[BLUNKALLS' COUNSEL]: Is there anyone on this jury panel who feels that no matter what the evidence is, and no matter what the instructions are from the Court, that you would not award a verdict under any circumstances in excess of a million dollars?

[CWF's COUNSEL]: I'm going to object, your Honor. It calls for a commitment from the jury without hearing the evidence.

THE COURT: Sustained as phrased.

. . . .

[BLUNKALLS' COUNSEL]: If I tell you now that at the close of all of the evidence, at the end of the case, that I intend to ask for judgment for the [Blunkalls], against [CWF, HSH and MHTC], for the loss of their father damages in the range of three to five million dollars; and I'm going to ask you for the same thing—damages of the [Blunkalls] against [CWF, HSH and MHTC] for the loss of their mother in the amount of three to five million dollars. Would a request for such an amount place you in a position where it would be difficult or impossible for you to render a verdict in this case?

[HSH's COUNSEL]: Your Honor, let me object. I think he's attempting to commit the jury to an amount. The Supreme Court says that should not be done.

THE COURT: At this point I think we've covered damages. I'm going to sustain the objection. Let's move on.

A key issue at trial was CWF's liability for Shomaker's actions. The Blunkalls alleged that CWF was liable because "Shomaker was an employee, agent and servant acting within the course and scope of his employment by and [sic] agency for [CWF]," and as a result of Shomaker's negligence, Blunkalls' parents died. CWF denied Shomaker was its employee, agent or servant, and argued in closing that Shomaker "was in fact not an employee of CWF, and that he was independent of CWF." Substantial evidence was presented by both the Blunkalls and CWF concerning CWF's operations, Shomaker's operations, and Shomaker's relationship with CWF.

At the close of evidence, the trial court conducted a conference to review jury instructions. The Blunkalls offered verdict directing Instructions A and B against CWF:

**INSTRUCTION NO. A**

Your verdict must be for plaintiffs Kelcee Blunkall, Gavin Blunkall and Hannah Blunkall and against defendant CWF Wood Products, Inc., if you believe:

First, the driver Keneth Shomaker was an agent of CWF Wood Products, Inc. and was operating his truck within the scope and course of his agency for CWF Wood Products, Inc. at the time of the collision, and

Second, either:

Keneth Shomaker failed to keep a careful lookout, or

Keneth Shomaker was following the Heavy and Specialized Haulers, Inc. truck too close, and

Third, Keneth Shomaker was thereby negligent, and

Fourth, such negligence either directly caused or combined with the acts of defendant Missouri Highways and Transportation Commission and/or defendant Heavy and Specialized Haulers, Inc. to cause the fatal injury to Timothy Blunkall.[3]

Instructions A and B modified paragraph first of Missouri Approved Instruction ("MAI") 18.01 by changing the word "employee" to "agent."[4] The Blunkalls' contention was that Shomaker was an agent of CWF[5] and that MAI 18.01 was "confusing because it uses employee in paragraph first, then goes on to say, operated his truck within the course and scope of his agency[ ]" without giving the option to submit that Shomaker was an "agent" of CWF in paragraph first. CWF objected to Instructions A and B because they deviated from MAI and that the Blunkalls' position throughout the course of trial was that Shomaker was an employee of CWF, which CWF denied.

The trial court did not submit Instructions A and B because they were "non-MAI instruction(s)." Rather, the trial court submitted Instructions 13 and 20[6] to the jury as the verdict directors, both of which read in part:

### INSTRUCTION NO. 13

. . . .

First, the driver Keneth Shomaker was an employee of CWF Wood Products, Inc. and was operating his truck within the scope and

course of his agency for CWF Wood Products, Inc. at the time of the collision, and . . .

The jury returned a verdict in favor of the Blunkalls and against MHTC, but found in favor of HSH and CWF on the remaining counts. The jury assessed 100 percent fault to MHTC. This appeal followed.

The Blunkalls cite seven points of error on the part of the trial court. We find Point I as to CWF dispositive.

### Point I: Error in Refusing Blunkalls' Verdict Directing Instructions A and B

The first issue for our determination is whether it was error to refuse Blunkalls' proposed Instructions A and B, which submitted that Shomaker was an "agent" of CWF rather than an "employee."

### Standard of Review

■ "Whether a jury was properly instructed is a question of law that this Court reviews *de novo.*" *Edgerton v. Morrison*, 280 S.W.3d 62, 65 (Mo. banc 2009). This Court reviews the evidence in the light most favorable to submission of an instruction. *Bach v. Winfield–Foley Fire Prot. Dist.*, 257 S.W.3d 605, 608 (Mo. banc 2008). "Reversal for instructional error is appropriate when the instruction misdirected, misled, or confused the jury and resulted in prejudice." *Edgerton*, 280 S.W.3d at 66. *See also Lee v. Mirbaha*,

---

3. Instruction A related to the counts for the death of Timothy Blunkall and Instruction B related to the counts for the death of Shelly Blunkall.

4. The trial court made a "tentative ruling" that it was not going to accept the instructions offered by Blunkalls, and later specifically denied the instructions following argument at the instruction conference.

5. In Blunkalls' brief, they contend that they "maintained [at trial] that Shomaker was CWF's *agent* and *servant* for all relevant purposes." (Emphasis added).

6. Instruction 13 related to the counts for the death of Timothy Blunkall, and Instruction 20 related to the counts for the death of Shelly Blunkall.

722 S.W.2d 80, 83 (Mo. banc 1986) (holding the complaining party must show that the instruction misdirected the jury, thereby resulting in prejudice).

## Analysis

The Blunkalls allege the trial court erred in submitting Instructions 13 and 12 rather than their proposed verdict directors, Instructions A and B, because the submission misstated the law and allowed the jury to find for Blunkalls only if Shomaker was an "employee" of CWF.

Missouri law regarding the difference between "agent" and "servant" is oftentimes misunderstood, and causes confusion when instructing a jury. *See* MAI 13.01 [2011 Revision] Comment D.[7] In light of this confusion, we first review Missouri principles of law regarding agency and employment to demonstrate how we arrive at our finding.

"Agency is the fiduciary relationship resulting from the manifestation of consent by an agent to a principal that the agent will act on the principal's behalf and subject to his control." *Bach,* 257 S.W.3d at 608; Restatement (Second) of Agency § 1 (1958). In *Bach,* the appellant "Aunt" appealed the trial court's judgment for injuries she sustained in an automobile accident in which the negligence of the driver, her nephew, was imputed to her. 257 S.W.3d at 608. The Missouri Supreme Court reviewed the principal/agent relationship in Missouri and held it was proper to impute nephew's negligence to Aunt because a principal/agent relationship existed between them.[8]

■ In order to establish a principal/agent relationship, the principal must have a "right to control" the agent. *Bach,* 257 S.W.3d at 608. The principal does not need to control or direct every movement, rather only those necessary to accomplish the final result. *Id.* at 610. A contract or agreement is not required, rather an agency relationship may be created by words and conduct. *Id.* at 608. An agency relationship may still exist even if the parties did not intend the relationship. *Id.*

■ "[A] *servant* is a person *employed* by a master to perform service in his affairs, whose physical conduct in the performance of the service is controlled, or subject to the right of control, by the master." *Douglas v. National Life & Accident Ins. Co. of Nashville, Tenn.,* 236 Mo.App. 467, 155 S.W.2d 267 (1941) (internal citations omitted) (emphasis added).

An "employee" has been defined as "one employed by another ... for ... wages or salary[.]" *Howard v. City of Kansas City,* 332 S.W.3d 772, 780 (Mo. banc 2011) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 743 (1993)), and "independent contractor" as "a person who contracts with another to do something for him, but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking." *Corder v. Morgan Roofing Co.,* 350 Mo. 382, 166 S.W.2d 455, 457 (1942). Missouri courts consider numerous factors, which focus on the level of control over the agent to *distinguish* between a "servant" and "independent contractor," but none of the factors alone are dispositive of the issue. *Mattan v. Hoover Co.,* 350 Mo. 506, 166

---

**7.** Even Appellants created a new term/theory in their brief, "nonemployee agent."

**8.** The issue in *Bach* was not whether the term "agent" should be used instead of "employ-ee"; rather, the issue was whether it was error to give comparative fault instructions imputing nephew's negligence to Aunt under the theory of agency.

S.W.2d 557, 564 (1942).[9]

The distinction between "agent," "servant," "employee," and "independent contractor" is important because it determines liability. "[A]n employer is liable under the theory of *respondeat superior* for damages attributable to the misconduct of an employee *or* agent acting within the course and scope of the employment *or* agency." *McHaffie by and Through McHaffie v. Bunch*, 891 S.W.2d 822, 825 (Mo. banc 1995) (emphasis added). The term "or" is a conjunction "used as a function word to indicate an alternative[.]" MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 872 (11th ed.2005). If the principal, or employer, has no right to control or direct the physical movements of the agent, the principal is not liable for injury caused by the agent " 'unless the act was done in the manner directed or authorized by the principal[.]' " *Douglas*, 155 S.W.2d at 271 (quoting *Kourik v. English*, 340 Mo. 367, 100 S.W.2d 901, 905 (1936)). Finally, liability of an independent contractor cannot flow from a theory of respondeat superior. *Corder, supra.*

With this foundation, we then look at Missouri law on instructional error. As noted by CWF, the use of an MAI is mandatory when the instruction is applicable, and failure to use the instruction is presumed to be prejudicial error. *State ex rel. Missouri Highway and Transp. Comm'n v. Dale*, 309 S.W.3d 380, 385 (Mo. App. S.D.2010); *see also Rice v. Bol*, 116 S.W.3d 599, 606 (Mo.App. W.D.2003) (noting "If there exists an applicable MAI, Rule 70.02(b) mandates its exclusive use."). The mandatory requirement for use of an MAI does not, however, prevent *modification* of an MAI instruction. *See Rice*, 116 S.W.3d at 606 (emphasis added). Modification of an MAI is specifically provided for in Rule 70.02(b): "Where an MAI must be modified to fairly submit the issues in a particular case ... then such modifications ... shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." Rule 70.02(b).[10]

A modified MAI should follow the substantive law and be readily understood by the jury. *Smith v. Kovac*, 927 S.W.2d 493, 497 (Mo.App. E.D.1996). CWF argues that the change of one word would have caused the instruction to deviate from MAI 18.01 and to do so, the Blunkalls must prove MAI 18.01 as given misstated the law. CWF's argument completely ignores Rule 70.02(b), which clearly allows a trial court to modify a jury instruction to "fairly submit the issues in a particular case." At issue in this case was the "label" applied to Shomaker, which

---

9. The factors considered include:

'(a) The extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer; and

(i) whether or not the parties believe they are creating the relationship of master and servant.'

*Mattan*, 166 S.W.2d at 564 (quoting "Section 2, Restatement of the Law of Agency Sec. 220") (internal citations omitted).

10. All rule references are to Missouri Court Rules (2012).

determined CWF's liability for Shomaker's actions. The Blunkalls' proposed verdict directors did not request a non-MAI instruction, as characterized by the trial court, but rather a modification of an MAI instruction submitting that Shomaker was an "agent" of CWF rather than an "employee."

The Court can look to the definitional instructions for guidance on the issues in the case because the purpose of definitions in jury instructions is to call the jury's attention to fact issues that determine liability. *See* MAI 13.01 [2011 Revision] Comment C.[11] In this case, MAI 13.06 was given to define "scope and course of agency." [12] The phrase "scope and course of agency" is defined when agency is at issue. *Agri Process Innovations, Inc. v. Envirotrol, Inc.*, 338 S.W.3d 381, 388 (Mo.App. W.D.2011). The language in MAI 13.06 given to the jury in this case follows the case law defining "agent." *See Bach*, 257 S.W.3d at 608 (agency results from the manifestation of consent by an agent to a principal that the agent will act on the principal's behalf and subject to his control); *Douglas*, 155 S.W.2d at 271 (principal may be liable for harm caused by agent if he had control over those actions). Because Instruction 5 defined the phrase "scope and course of agency," the instruction called the jury's attention to the fact that the existence of an agency relationship was an issue in the case.

■ At the instruction conference, Blunkalls' counsel specifically noted they were "contending [Shomaker] was an agent, and [Instructions 13 and 20 were] confusing because [they] use[d] employee in paragraph first, then goes on to say, operated his truck within the course and scope of his agency." Blunkalls' counsel offered verdict directing Instructions A and B in lieu of Instructions 13 and 20, which were ultimately given to the jury. The Blunkalls clearly objected to the given verdict directors, and even submitted their proposed verdict directors to cure the alleged objections. *See Mitchell v. Evans*, 284 S.W.3d 591, 594 (Mo.App. W.D.2008) (holding that to preserve a claim of instructional error, a specific objection must be made stating "distinctly the matter objected to and the grounds for the objection.").[13]

Since the trial in this case, MAI 18.01 has been revised and now reads:

> First, the driver ... was operating the (defendant's) motor vehicle within the scope and course of [employment by][agency for] (defendant's name)....

MAI 18.01 [2012 Revision] Verdict Directing Modification Required.

This revision provides the option to submit liability because of an agency relationship, and more accurately reflects Missouri law on agency and employment. However, this revision to MAI 18.01 was not required before the trial court could modify the verdict directors as the Blunkalls requested. *See* Rule 70.02(b). Rule 70.02(b) lays out the criteria for modification of an MAI instruction. *See also Smith*, 927

---

11. The Blunkalls' "Fifth Amended Petition" alleged "[t]hat at all times herein mentioned [Shomaker] was an employee, agent and servant acting within the course and scope of his employment by and [sic] agency for [CWF]."

12. Labeled Instruction No. 5.

13. Rule 70.03 requires counsel to make specific objections to instructions considered "erroneous" before the jury retires to consider its verdict in order for a party to assign error to the giving or failing to give an instruction. "The purpose behind Rule 70.03 is to put the court on notice of both the fact of objection and the reasons." *Mitchell*, 284 S.W.3d at 594.

**544**

S.W.2d at 497 (a modified MAI instruction should follow the substantive law).

▮ Both the Blunkalls and CWF cite *Glidewell v. S.C. Management, Inc.*, 923 S.W.2d 940 (Mo.App. S.D.1996), in which the trial court allowed the substitution of "agent" for "employee" in MAI 18.01, just as the Blunkalls requested at trial.[14] The *Glidewell* court did "not decide whether the substitution constituted permissible or impermissible modification, since [the court did] not find that the error resulted in 'manifest injustice' or a 'miscarriage of justice.'" *Id.* at 954. Therefore, any "expressions of opinion, not in anywise necessary for the actual decision ... before the [*Glidewell*] court" must be considered obiter dicta. *State ex rel. Anderson v. Hostetter*, 346 Mo. 249, 140 S.W.2d 21, 24 (Mo. banc 1940). " 'Statements are obiter dicta if they are not essential to the court's decision of the issue before it.'" *Richardson v. QuikTrip Corp.*, 81 S.W.3d 54, 59 (Mo.App. W.D.2002) (quoting *Campbell v. Labor & Indus. Relations Comm'n*, 907 S.W.2d 246, 251 (Mo.App. W.D.1995)). "While *dicta* can be persuasive when supported by logic, it is not precedent that is binding upon us." *Swisher v. Swisher*, 124 S.W.3d 477, 482 (Mo.App. W.D.2003). Thus, we are not bound, as precedent, by this Court's reference in *Glidewell* to the modification of MAI 18.01 as "error" or that the term "employee" "should have been used." 923 S.W.2d at 954. *But see Agri Process*, 338 S.W.3d at 388 (noting in support of the court's decision that MAI 18.01 provides that "when agency is in issue, the verdict director shall be modified to submit to the jury the question of whether the agent acted within the 'scope and course of his agency.'").

We find Instructions 13 and 20 submitted to the jury erroneously stated the law in light of the Blunkalls' proposed verdict directors modifying the instructions by changing the word "employee" to "agent."[15] The verdict directors ultimately submitted allowed the jury to find for the Blunkalls only if the jury found Shomaker was an employee of CWF and that, coupled with the agency definition instructions submitted, misstated the law. The Blunkalls' requested modifications would have fairly submitted the liability issue based on agency, as framed by the definition instruction and liability theory presented by the Blunkalls. In addition, the requested modification was simple, brief, and impartial as required by Rule 70.02(b).

▮ Next, we look to whether the Blunkalls met their burden to show that the instruction prejudiced them in that it "misdirected, misled, or confused the jury." *Agri Process*, 338 S.W.3d at 387 (internal quotation and citation omitted). "In determining whether the jury was misdirected, misled or confused by an instruction is whether an average juror would correctly understand the applicable rule of law being conveyed thereby." *Rice*, 116 S.W.3d at 606 (internal quotation and citation omitted). The error must have materially affected the merits and outcome of

---

**14.** The Blunkalls also cited *Glidewell* at the instruction conference in support of their requested verdict directors. The Blunkalls noted the *Glidewell* court was

> critical and in its opinion, I think cautioned against modifying the instructions so I understand that the Court is not going to allow us to submit this. But—and in that case they didn't find that it was any miscar-

riage of justice. They really didn't make a ruling as to whether or not the instruction could have been modified in accordance with the way it was modified and the way we think it ought to be modified in this case.

**15.** We have found no Missouri case law holding such a modification would be improper.

the case to reverse for instructional error. *Id.*

We recognize the precedent cited in *Glidewell* that the prejudicial effect of an erroneous instruction can be determined by this Court looking at the arguments made by counsel. 923 S.W.2d at 954. Here, the erroneous instruction caused the Blunkalls to make a forced argument in an attempt to somehow reconcile the "employee" requirement with the "scope of agency" definition. They argued that Shomaker was "working for CWF" and CWF's only defense has to do "with this employee/agency." Blunkalls' counsel proceeded to read paragraph "First" of the instructions at issue, and with respect to the agency definition instruction stated:

> Now agency is defined—we kind of use employment and agency interchangeably but agency is what we're talking about here—the course and scope of the agency, and that is defined. There's a legal definition. That's Instruction Number 5.

Later Blunkalls' counsel argued:

> [BLUNKALLS' COUNSEL]: Again, the only issue you need to decide and the evidence is quite clear, [Shomaker] was doing what he was hired to do. He believed himself to be an *employee and agent* of [CWF] at the time of the collision. He was on their business, serving their business interest at the time, and the evidence is clear that he was acting as their agent within the course and scope of his agency at the time of the collision.
>
> [CWF's COUNSEL]: I'm going to object, Your Honor. That misstates the instruction which says Shomaker was an

employee. So I would ask that last statement be stricken.

> THE COURT: Overruled. The jury shall consider the instructions as provided.

CWF argues Blunkalls' counsel removed any confusion amongst the jury because he explained that "employment" and "agency" are interchangeable terms.[16] *See Glidewell*, 923 S.W.2d at 954. Any possible clarification by the Blunkalls' closing argument was eliminated by CWF's closing argument, which arguably created even more confusion for the jury. During closing, CWF examined Instructions 13 and 20 and noted that the wording of the instructions was extremely important. After reading the paragraph "First" of the instruction, CWF argued:

> So, the question is do you believe that [Shomaker] was an employee of [CWF]? And if you do not believe that [Shomaker] was an employee then you cannot find against CWF. That is the very first step. *If [Shomaker] was not an employee, you cannot find against CWF.* You must write CWF on that line where [Blunkalls' counsel] asked you to write the Blunkall children."

CWF went on to point to evidence that Shomaker was not an employee of CWF, such as the fact that CWF gave Shomaker a 1099, "not a W–2 that employees get when they work anywhere else," and that the 1099 noted the amount paid was for non-employee compensation.

■ Here, unlike *Glidewell*, the closing argument created more confusion for the jury. At closing, Blunkalls' counsel argued that "employment" and "agency" were used interchangeably but agency was the issue, while CWF told the jury they

---

**16.** Arguably, the confusion over "agent" versus "employee" was created early on in the case. For example, Blunkalls' counsel asked Shomaker whether he considered himself

CWF's "agent and employee," but the trial court only allowed the question as to "employee" and not "agent."

had to find Shomaker was an employee before they could find against CWF. The closing arguments did not remove any confusion over whether "agent" meant something different than "employee." *Id.* at 954. Notes on Use 2 to MAI 13.06 acknowledges that using the term "employment" instead of "agency" might be misleading to jurors "who probably think of employees as those who receive regular paychecks." [17]

■ From reading the verdict directors, a reasonable juror would have thought that the jury was required to find that Shomaker was an employee of CWF before finding against CWF. An instruction that requires a finding that tortfeasor was an "employee" and acting within the scope and course of "his agency" is confusing and misleading, and misstates the law. It is well settled that an "employer" is liable for damages attributable to the misconduct of an "agent" acting within the course and scope of the agency. *McHaffie*, 891 S.W.2d at 825. CWF seized on the misleading language in the verdict directors and took every opportunity to hammer this point in closing argument. CWF's counsel pointed to what most lay people consider evidence of employment, the receipt of a W–2 instead of a 1099, but CWF's potential liability was not based on Shomaker being an employee, but rather an agent of CWF. To require the jury to find that Shomaker was an employee of CWF before they could find against CWF

was misleading, confusing, and prejudicial. Unfortunately, Blunkalls' rebuttal, compelled by the erroneous wording of the instruction, could not clear up the confusion created by CWF's closing argument. [18]

We conclude the trial court erred in refusing to submit the Blunkalls' verdict director Instructions A and B, and giving Instructions 13 and 20, and Blunkalls were prejudiced by the trial court's error. Therefore, Blunkalls' Point I is sustained, and we remand the case for a new trial as to CWF.

Having concluded it was reversible error to submit Instructions 13 and 20, we must determine the scope of remand. Nothing in Blunkalls' Point I, or any other point, challenges the jury's assessment of damages. To conclude the jury's assessment of Blunkalls' damages was somehow prejudiced by the giving of Instructions 13 and 20, we would have to assume the jury failed to follow the damage instruction. [19] *See McHaffie*, 891 S.W.2d at 828. The only apparent prejudicial effect of these erroneous instructions that we find was on the assessment of liability and apportionment of fault as to CWF. Accordingly, it is only that part of the judgment that must be reversed.

The assessment of fault as to CWF is reversed and the cause is remanded to the trial court with directions to retry the issue of liability as to CWF only. This

---

17. "There is no doubt the Notes on Use contained in MAI are to be followed." *Duren v. Dougherty*, 585 S.W.2d 527, 529 (Mo.App. W.D.1979).

18. The Blunkalls responded by arguing it is not whether you get a 1099 or W–2, but whether "he's an employee acting within the course and scope of his agency—and for legal purposes, it's whether or not he's under the control or the right of control." Blunkalls concluded this portion of closing by arguing that the right to control was the issue, and

that all the documents show that Shomaker was CWF's agent, representative and had full authority to act on behalf of CWF.

19. The damage instructions read: "If you find in favor of plaintiffs, then you must award plaintiffs such sums as you believe will fairly and justly compensate plaintiffs for any damages you believe plaintiffs sustained and are reasonably certain to sustain in the future as a direct result of the fatal injury."

Court concludes that the judgment as to the amount of damages is affirmed.

### Points II and III: Blunkalls' Claims of Error Regarding Evidentiary Matters Involving CWF

Blunkalls' Points II and III raise claims of error by the trial court in allowing certain deposition testimony and sustaining CWF's objections to specific questioning. Finding Point I dispositive, we need not address these claims of error as the evidence may come in differently upon retrial.

### Point IV: Giving of Converse Instructions 12 and 19 Regarding HSH Was Not Preserved

On appeal, the Blunkalls argue HSH's converse Instructions 12 and 19 were not phrased in "substantially the same language as the verdict directors" in that they failed to converse the submission that Toivonen's negligence "combined with" the acts of joint tortfeasors and, therefore, the trial court erred in giving the instructions. However, Blunkalls did not raise this objection at trial or in their "Motion for New Trial."

Blunkalls did not object to the content of converse Instructions 12 and 19.[20] Rule 70.03 states:

> Counsel shall make specific objections to instructions considered erroneous. No party may assign as error the giving or failure to give instructions unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the

grounds of the objection. Counsel need not repeat objections already made on the record prior to delivery of the instructions. *The objections must also be raised in the motion for new trial in accordance with Rule 78.07.*[21]

(Emphasis added).

The Blunkalls also failed to raise this alleged error of these converse instructions in their Motion for New Trial, but did raise the issue in their "Memorandum in Support of ... Motion for New Trial." However, the Memorandum was filed five weeks after the deadline to file a motion for new trial.[22] "A motion for new trial may not be amended to add a new point after the expiration of the time provided by court rule." *Greco v. Robinson,* 747 S.W.2d 730, 734 (Mo.App. E.D.1988). Untimely amended motions for a new trial are a nullity and cannot be the foundation for preservation of errors to be complained of on appeal. *Lloyd v. Garren,* 366 S.W.2d 341, 344 (Mo.1963).

Because Blunkalls did not object to these instructions, the claimed error in the converse instructions is not preserved for appeal. *Barlett By and Through Barlett v. Kansas City Southern Ry. Co.,* 854 S.W.2d 396, 400 (Mo. banc 1993). Point IV is denied.

### Points V and VI: Blunkalls' Claims of Error Involving HSH's Closing Argument Not Preserved for Appellate Review

The Blunkalls' remaining complaints regarding HSH involve statements

---

**20.** The only objection Blunkalls made to the converse instructions was that having two converse instructions was an "over emphasis on the converse instructions," but counsel later withdrew his "comment" on the matter.

**21.** Rule 78.07(a) states: "In jury tried cases, except as otherwise provided in this Rule

78.07, allegations of error must be included in a motion for a new trial in order to be preserved for appellate review."

**22.** Blunkalls concede in their brief that the error alleged in Point IV was not properly preserved.

made during closing argument regarding the Blunkalls' failure to offer a deposition, and statements personalizing the HSH corporate defendant with the corporate representative's life history. Both of these contentions were not properly preserved for our review because no objections were made to the arguments. It is a settled principle of Missouri trial practice that to preserve trial court error, it is necessary to give the trial court the first opportunity to correct the error, *State v. Jordan,* 751 S.W.2d 68, 75 (Mo.App. E.D.1988), without the delay, expense, and hardship of appeal and retrial. *See Pruitt v. Community Tire Co.,* 678 S.W.2d 424, 429 (Mo.App. W.D.1984). In accordance with the discretion afforded this Court, we decline to review these claimed errors. *See* Rule 84.13(c).

### Point VII: Blunkalls' Claim of Error in Trial Court Sustaining Certain Objections During Voir Dire Inquiry

The Blunkalls allege the trial court erred in preventing two attempts during voir dire to ascertain any jury panel bias or prejudice to awarding a million dollar verdict or bias or prejudice by reason of the amount sued for by the Blunkalls.

### Standard of Review

 The trial court's denial of a motion for new trial is reviewed under an abuse-of-discretion standard, and we must indulge every reasonable inference favoring the trial court's ruling. *Ashcroft v. TAD Resources Intern.,* 972 S.W.2d 502, 505 (Mo.App. W.D.1998). A trial court is afforded broad discretion to allow or prohibit questions of the venire during voir dire inquiry. *Id.* We will not reverse the trial court's rulings made during voir dire "unless they clearly and manifestly indicate an abuse of such discretion." *Id.* (internal quotations and citations omitted).

An abuse of discretion occurs if a trial court's decision was clearly against reason and results in prejudice against the party seeking the new trial. *Criswell v. Short,* 70 S.W.3d 592, 594 (Mo.App. S.D.2002). As noted in *State v. Olinghouse,* 605 S.W.2d 58, 68 (Mo. banc 1980), a

> trial court necessarily and properly has considerable discretion in *control and conduct of voir dire examination* of veniremen; and an appellate court will differ or interfere with the exercise of that discretion only when the record shows a manifest abuse of discretion *and* a real probability of injury to the complaining party.

(Emphasis added).

### Analysis

The voir dire questioning prevented by the trial court is as follows:

[BLUNKALLS' COUNSEL]: Is there anyone on this jury panel who feels that no matter what the evidence is, and no matter what the instructions are from the Court, that you would not award a verdict under any circumstances in excess of a million dollars?

[CWF's COUNSEL]: I'm going to object, your Honor. It calls for a commitment from the jury without hearing the evidence.

THE COURT: Sustained as phrased.

. . . .

[BLUNKALLS' COUNSEL]: If I tell you now that at the close of all of the evidence, at the end of the case, that I intend to ask for judgment for the [Blunkalls], against [CWF, HSH and MHTC], for the loss of their father damages in the range of three to five million dollars; and I'm going to ask you for the same thing—damages of the [Blunkalls] against [CWF, HSH and MHTC] for the loss of their mother in the amount of three to five million dollars. Would a

request for such an amount place you in a position where it would be difficult or impossible for you to render a verdict in this case?

[HSH's COUNSEL]: Your Honor, let me object. I think he's attempting to commit the jury to an amount. The Supreme Court says that should not be done.

THE COURT: At this point I think we've covered damages. I'm going to sustain the objection. Let's move on.

■ "[T]here are limits to the scope of permissible examination." *State v. Norton,* 681 S.W.2d 497, 498 (Mo.App. E.D. 1984). On the other hand, the "latitude" trial counsel is afforded in examining prospective jurors has been described as "reasonable" and "wide." *Littell v. Bi–State Transit Dev. Agency,* 423 S.W.2d 34, 37 (Mo.App. St.L.D.1967); *Peth v. Heidbrier,* 789 S.W.2d 859, 863 (Mo.App. E.D.1990); *Smith v. Nickels,* 390 S.W.2d 578, 582 (Mo. App. St.L.D.1965); *Crawford ex rel. v. Shop 'N Save Warehouse Foods, Inc.,* 91 S.W.3d 646, 652 (Mo.App. E.D.2002). Blunkalls are correct that questions designed to attempt to ascertain bias or prejudice concerning a dollar figure for an award of damages are relevant and permissible inquiries if damages are an issue in the case, and no attempt is made to commit the jury to a dollar figure.

■ We do not need to decide if the trial court's ruling was or was not an abuse of discretion in controlling the voir dire examination because even if it was error, we do not believe it was prejudicial. During voir dire, the Blunkalls were able to extensively inquire into the jury panel's beliefs regarding damages and monetary awards on topics such as: (1) putting a price on and/or awarding damages for the loss of human life; (2) "awarding X dollars of damages"; (3) religious beliefs against placing a monetary value on loss of life;

(4) considering damages for loss of companionship between parents and children; (5) considering damages for loss of comfort; and (6) considering loss of instruction, guidance, counsel and training from parents.

After this line of questioning, Blunkalls' counsel asked whether panel members had "feelings against being able to enter a substantial or a large verdict ... [m]aybe you feel like you would be criticized ... if you enter a verdict for a large sum of money—maybe millions of dollars—you just couldn't do that." Multiple panel members responded that they could not award millions and large verdicts. Then, Blunkalls' counsel asked whether any panel member had a figure in mind that they thought was "just too large," despite the evidence, that they could not award. An objection was overruled, and the Blunkalls were able to continue inquiry into the "abstract amount" question. *See Adkins v. Hontz,* 337 S.W.3d 711, 719 (Mo.App. W.D. 2011) (holding a question asking if the person has an amount in mind, in the abstract, above which they would not award no matter what the evidence revealed was proper and not objectionable). Finally, counsel was allowed to ask if any member had a figure in mind, "X number of dollars," that they would not award regardless of the evidence. After this line of questioning and answers from the panel, Blunkalls' counsel asked the voir dire questions in issue.

"We will not reverse the trial court's rulings made during voir dire, unless they clearly and manifestly indicate an abuse of discretion[,]" and the complaining party was prejudiced by the error. *Intertel, Inc. v. Sedgwick Claims Management Services, Inc.* 204 S.W.3d 183, 198 (Mo.App. E.D. 2006). Abuse of discretion is found when a ruling is arbitrary or unreasonable. *Ashcroft,* 972 S.W.2d at 505. "Although the

trial court must be careful so as not to arbitrarily limit voir dire, we have recognized that the court may set limits on questioning so as to promote the efficient administration of jury resources." *Adkins,* 337 S.W.3d at 719 (internal quotation and citation omitted).

The Blunkalls were allowed to question the panel on their feelings about "substantial" verdicts and verdicts in the "millions of dollars." Blunkalls' counsel then attempted to ask another question about large verdicts, only worded differently, by asking if the jury panel members would not award a verdict under any circumstances in excess of a million dollars. The Blunkalls were not prejudiced by the trial court's refusal to allow a second question on the same subject matter already explored.[23]

In addition, the Blunkalls were afforded wide latitude in questioning the panel on the issue of damages, if they had a figure in mind that was "just too large" or a figure of "X number of dollars" they would not award, the categories of damages, and the panel's beliefs on various items of damages. In the context of the whole line of questioning, we cannot say the trial court's exclusion of the questions regarding awarding a verdict in excess of a million dollars and damages in the range of three to five million dollars was an abuse of discretion for which the Blunkalls have demonstrated prejudice.

Blunkalls' Point VII is denied.

GARY W. LYNCH, P.J., and NANCY STEFFEN RAHMEYER, J., concur.

---

**23.** In addition, the jury returned verdicts totaling $1,750,000, which was "in excess of a million dollars." Therefore, any error in refusing this second question was clearly harmless error and moot.