Travis CLARK, Appellant,

v.

**MISSOURI & NORTHERN ARKANSAS RAILROAD COMPANY, INC., Respondent.**

**No. WD 63144.**

Missouri Court of Appeals, Western District.

Nov. 30, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 1, 2005.

Application for Transfer Denied April 5, 2005.

---

**3.** Because point one is dispositive, point two    need not be addressed.

Michael L. Nepple, St. Louis, MO, for appellant.

Paul M. Brown, St. Louis, MO, for respondent.

Before JAMES M. SMART, JR., Presiding Judge, JOSEPH M. ELLIS, Judge and LISA WHITE HARDWICK, Judge.

JOSEPH M. ELLIS, Judge.

Travis Clark appeals a judgment in favor of the Missouri & Northern Arkansas Railroad Company, Inc. ("MNA") on his jury-tried claim, under the Federal Employers' Liability Act ("FELA," 45 U.S.C. §§ 51–60), for damages arising out of personal injuries Clark claimed to have sustained as a result of a motor vehicle accident which occurred during the course and scope of his employment by MNA. Clark claims the circuit court erred in entering judgment on the jury's verdict against him due to an improper jury instruction and because it excluded certain evidence offered by Clark at trial. We affirm the judgment of the circuit court.

On the day of the accident (May 2, 2000), Clark was working for MNA as a train conductor. The other member of the crew was Rodney Ayres, the engineer. Their job that day involved taking a loaded coal train from Nevada, Missouri, to the Kansas City Power & Light ("KCP & L") power plant near Ladue, Missouri, dropping off the train of loaded coal cars at the power plant, and picking up a train of empty coal cars and returning it to Nevada. The train starts out loaded with coal in Nevada. The train then heads east to the KCP & L power plant on a spur line. MNA delivers the full coal cars to specific locations outside the KCP & L plant, and then picks up the empty coal cars from prior deliveries and returns them to Nevada. While exchanging full coal cars for empty ones, the train must make several different movements along the spur track and various sidings via switches. Sometimes, the engine, with the engineer in the cab, is in front of the coal cars and moving forward so that the engineer can see the track and surroundings in front of him. Other times, the engineer is performing a backward "shoving" movement, such that the long line of coal cars is between the engine and the "point" of the shove and, thus, the engineer cannot see anything as he proceeds backwards. A portion of the KCP & L plant job requires the train to shove backward around a large loop or "balloon" track over a fairly significant distance. During this long shoving movement, the engineer is in a position where he is unable to see the end of his train as the coal cars that were behind the engine

are now blocking the view as the engine is backed up and around the loop.

In compliance with MNA's operating procedures and rules, engineer Ayres drove the train and conductor Clark worked from a company Jeep. Clark drove the Jeep on public roads and would meet the train at various points along the way as needed to perform the job. Clark's duties included performing roll-by inspections of the train at various points along the way and flagging public crossings ahead of the train. Clark was also responsible for protecting shoving movements by the train where the engineer could not see ahead.

In order for Clark to perform his duties on the KCP & L plant job, he needed to communicate with the engineer from time to time. Whenever Clark needed to make such contact, he used a Motorola two-way communications radio in the Jeep, which was equipped with a handheld microphone. To use the radio, Clark had to pick up the microphone and speak into it, which required the use of one hand.

At about 6 p.m. on May 2, 2000, while driving southbound on County Road BB, a winding, hilly road located in Bates County, Missouri, Clark was involved in a single-vehicle accident while operating a company-owned Jeep at about 40 miles per hour. The weather was cloudy and the road was dry. The accident occurred when Clark failed to negotiate a series of curves. The right front tire of the Jeep Clark was driving went off the edge of the pavement when he took his eyes off the road and reached with his right hand for the microphone of the two-way radio to call the engineer. Clark then slammed on the brakes and steered the Jeep to the left, but over-corrected, drove off the left side of the road, and crashed into a culvert. Clark acknowledged that he could have waited until later to use the radio or

he could have slowed down going around the curve or he could have pulled over to the side of the road to use the radio. He further testified that at the time he reached for the microphone, he thought it was safe to do so and believed he was using "common sense" for his safety.

Missouri State Highway Patrol Trooper Jeff Fugett, who arrived while Clark was still at the scene, investigated the accident and interviewed Clark regarding how it occurred. Trooper Fugett concluded that Clark's inattention was a probable contributing circumstance to the accident, and cited Clark for operating a motor vehicle in a careless and imprudent manner. Later, Clark paid a fine to resolve the matter.

MNA's corporate representative, Alan Satunas, testified that prior to the accident, neither Clark nor anyone else who had performed the conductor's duties for the KCP & L plant job had ever complained to MNA that it was unsafe for employees to use a two-way radio while operating a company Jeep, or that a rule prohibiting MNA employees from using two-way communications radios while operating motor vehicles was necessary.

At some unspecified point prior to Clark's accident, MNA had sometimes used three people to work the KCP & L plant job. The three-person crew usually consisted of a conductor and an engineer, both of whom rode on the train itself, and a MNA employee who drove a company Jeep to pick up and drop off members of the train crew at various work locations as the KCP & L plant job progressed. On the day of the accident, however, MNA was using only a two-person crew consisting of a conductor and an engineer. Engineer Ayres drove the train and conductor Clark monitored it while working from a company Jeep, and the third MNA employee or independent contractor was eliminated. Satunas testified that the new

method of doing the work required by the KCP & L plant job was reasonably safe for everyone involved and that shoves at the KCP & L plant could be properly protected from the company Jeep.

Clark's retained expert witness, Charles Culver, offered testimony at trial regarding general railroad operating practices and rule violations by MNA. Culver testified that MNA violated a number of rules in the General Code of Operating Rules ("GCOR")[1] by not having two crew members on the engine during the KCP & L plant job. These rules describe various duties of train crew members when operating a train or performing switching movements. Culver testified that these rules could not be fully complied with unless both the engineer and the conductor rode on the engine and that MNA violated them by adopting the new method, whereby the conductor worked from the Jeep instead of riding on the engine. Culver also testified that based on these alleged rule violations, it was his opinion that MNA failed to provide Clark with reasonably safe conditions for work or reasonably safe methods for work. On cross-examination, Culver acknowledged that the various GCOR rules he claimed MNA had violated all related to safe operation of a train, not to safe operation of a motor vehicle. Culver also acknowledged that Clark's accident did not involve operation or movement of the train, and that to the best of his knowledge, nothing happened to the engineer, the engine, or the train performing the KCP & L plant job on the day of Clark's motor vehicle accident.

Satunas testified that although the GCOR contains several pages of rules relating to two-way radio usage, none of those rules prohibit railroad employees from using a radio while operating a motor vehicle. Moreover, Satunas testified, the GCOR provides that an individual participating railroad company may adopt "special instructions," applicable only to that company, which replace any other GCOR rules with which the special instructions may otherwise conflict. Prior to Clark's accident, MNA had adopted such a special instruction (namely, Item F of the Clinton Branch portion of MNA's timetable), which expressly stated that it was permissible for MNA's train crews to perform the KCP & L plant job with a crew member in a company motor vehicle provided that all switches were properly inspected and aligned and warning was provided at any intersecting road crossings. On cross-examination, Satunas agreed that having conductors perform the KCP & L plant job in the company Jeep exposed them to the hazards of automobile travel and using two-way radios.

During the instruction conference, Clark tendered Instruction A, a verdict director which, although patterned in large part after the current version of MAI 6th 24.01 ("[1992 Revision] Verdict Directing— F.E.L.A.—Failure to Provide Safe Place to Work"), did not conform to the applicable Notes on Use governing that instruction. The circuit court refused to give Instruction A because it did not conform to MAI 6th 24.01 and the associated Notes on Use, but gave instead Instruction 7, which did.[2] After a four-day trial, the jury deliberated for about four and a half hours before returning a verdict, signed by ten of the jurors, in favor of MNA. The circuit court entered judgment on the jury's verdict on

---

1. The GCOR is a set of operating and safety rules formulated, maintained, and voluntarily subscribed to by most U.S. railroad companies, including MNA.

2. Clark tendered Instruction 7 as an alternative in the event the court refused Instruction A.

April 25, 2003, and on July 24, 2003, denied Clark's Motion for New Trial. Clark filed a timely Notice of Appeal on August 4, 2003, ultimately leading to this appeal.

█ In his first point, Clark claims the trial court committed reversible error in failing to instruct the jury with Instruction A because it properly submitted the issue of whether MNA was negligent in failing to provide him a reasonably safe method of work for the KCP & L plant job.

Here is the text of Instruction A as submitted by Clark:

> Your verdict must be for plaintiff if you believe:
>
>> First, methods for work were not reasonably safe and defendant knew or by using ordinary care could have known of such methods and that they were not reasonably safe, and
>>
>> Second, with respect to such methods for work, defendant failed to provide reasonably safe methods of work, and
>>
>> Third, defendant was thereby negligent, and
>>
>> Fourth, such negligence resulted in whole or in part in injury to plaintiff.

Meanwhile, Instruction 7, which was also submitted by Clark but given to the jury over his objection, provided:

> Your verdict must be for plaintiff if you believe:
>
>> First, conditions for work were not reasonably safe and defendant knew or by using ordinary care could have known of such conditions and that they were not reasonably safe, and
>>
>> Second, with respect to such conditions for work, defendant failed to provide reasonably safe methods of work, and
>>
>> Third, defendant was thereby negligent, and

>> Fourth, such negligence resulted in whole or in part in injury to plaintiff.

Both tendered instructions included a "notice tail" pursuant to Note 2 of the Notes on Use for MAI 6th 24.01 that hypothesized actual or constructive notice to MNA of the allegedly unsafe circumstances of Clark's workplace. However, the two instructions differed in the language used in the "notice tail." Instruction 7 referred to the allegedly unsafe circumstances of the plaintiff's workplace as "conditions for work," as instructed in Note 2 of the Notes on Use, whereas Instruction A referred to these circumstances as "methods of work," which departed from the language used in Note 2 of the Notes on Use in order to match the language of the single specification of negligence upon which Clark elected to submit his case against MNA.

As Clark concedes in his brief, there is no question that Instruction 7, as prepared and submitted by him, follows both MAI 6th 24.01 and the Notes on Use accompanying it to the letter. Moreover, Paragraph 2 of the Notes on Use for MAI 6th 24.01 expressly states that the "notice tail" language about which Clark is complaining on appeal was chosen in order to comply with the Missouri Supreme Court's explicit directives in *Qualls v. St. Louis Southwestern Railway Company*, 799 S.W.2d 84 (Mo. banc 1990), *cert. denied* 499 U.S. 961, 111 S.Ct. 1585, 113 L.Ed.2d 650 (1991), in which the Court directed that the then current Notes on Use were "to be disregarded to the extent that they are inconsistent." Missouri Supreme Court Committee on Civil Jury Instructions, MISSOURI APPROVED JURY INSTRUCTIONS (6th ed.2002) at 372–73; *Qualls*, 799 S.W.2d at 86–87.

█ Notwithstanding this, Clark insists that the trial court should have given Instruction A, arguing that Instruction 7 misstates the federal substantive law

which governs FELA actions brought in state courts.[3]

■ "Federal [FELA] causes are tried in state courts under state procedural rules," *Besse v. Mo. Pac. R.R. Co.*, 721 S.W.2d 740, 744 (Mo. banc 1986), and the form of instruction in such causes "is a procedural matter governed by the law of Missouri." *Meredith v. Mo. Pac. R.R. Co.*, 467 S.W.2d 79, 82 (Mo.1971). Therefore, "[t]he form of instructions and the manner in which the substantive law is submitted to the jury in a FELA case [prosecuted in state court] is governed by state law." *Cupp v. Amtrak*, 138 S.W.3d 766, 773 n. 1 (Mo.App. E.D.2004). It is, and has for many years been, the law of this state that "[i]f a Missouri Approved Instruction is applicable, such instruction must be given to the exclusion of all others." *Karashin v. Haggard Hauling & Rigging, Inc.*, 653 S.W.2d 203, 206 (Mo. banc 1983); *Rule 70.02(b)*. Thus, "[i]t is well settled that when a MAI instruction is applicable, its use is mandatory." *Bueche v. Kansas City*, 492 S.W.2d 835, 840 (Mo. banc 1973). The reason for this was explained by the Missouri Supreme Court in *Davis v. St. Louis Southwestern Railroad Company*, 444 S.W.2d 485 (Mo.1969), as follows: " 'If this court is to make this system work, and preserve its integrity and very existence, we must insist *that mandatory directions be followed* and that the pattern instructions be used as written.' " *Id.* at 489 (emphasis in original) (quoting *Brown v. St. Louis Pub. Serv. Co.*, 421 S.W.2d 255, 258 (Mo. banc 1967)).

■ The same considerations apply to the Notes on Use, which "are an integral part of the system of Missouri Approved Instructions." *Gormly v. Johnson*, 451 S.W.2d 45, 46–47 (Mo.1970). "We shall not quibble as to any possible difference in the failure to follow an [approved] instruction and a failure to follow the directions on use. Both are presumed to be error[.]" *Id.* at 47. Indeed, as this court put it a few years later: "From the strict adherence to M.A.I. so often and forcefully reiterated by the Supreme Court, has developed the equally forcible admonition that the 'Notes on Use' thereof be religiously followed." *Royal Indem. Co. v. Schneider*, 485 S.W.2d 452, 458 (Mo.App. W.D.1972). And, since "MAI instructions, promulgated and approved by the Supreme Court, are authoritative if applicable to the factual situation . . . this court, as was the trial court, is bound by them as surely as it is bound by Supreme Court cases and rules." *Lindsay v. McMilian*, 649 S.W.2d 491, 493–94 (Mo.App. W.D.1983); *Botanicals on the Park, Inc. v. Microcode Corp.*, 7 S.W.3d 465, 470 (Mo.App. E.D.1999).

■ Our Supreme Court has, however, crafted a narrow exception to this general rule. "The Missouri Supreme Court has held that MAI and its Notes on Use are not binding to the extent they conflict with the substantive law. If an instruction following MAI conflicts with the substantive law, any court should decline to follow MAI." *Letz v. Turbomeca Engine Corp.*, 975 S.W.2d 155, 167 (Mo.App. W.D.1997) (citing *State v. Carson*, 941 S.W.2d 518, 520 (Mo. banc 1997)). On the other hand, the Missouri Supreme Court has expressly directed that "[i]f the Missouri Approved Instructions include an instruction which

---

3. FELA cases may be brought, at the plaintiff's option, in federal court or in state court. *45 U.S.C. § 56.* Clark chose to bring his FELA suit against MNA in the Circuit Court of Jackson County. "As a general matter, FELA cases adjudicated in state courts are subject to state procedural rules, but the substantive law governing them is federal." *St. Louis Southwestern Ry. Co. v. Dickerson*, 470 U.S. 409, 411, 105 S.Ct. 1347, 1348, 84 L.Ed.2d 303, 306 (1985).

correctly states the substantive law [governing the case], the approved instruction must be given." *Meredith,* 467 S.W.2d at 82.

Clark urges us to invoke this exception and to declare Instruction 7 erroneous on the ground that it is a misstatement of the federal law governing his claim, under FELA, that MNA was negligent since the "methods of work" prescribed by MNA for the KCP & L plant job were not reasonably safe. However, we decline his invitation to do so, as he cites no state or federal case authority whatsoever for his position that MAI 6th 24.01 or the associated Notes on Use misstate or conflict with the substantive law governing this case. *See Alderson v. Clark Oil & Refining Corp.,* 637 S.W.2d 84, 88–89 (Mo.App. W.D.1982).

Although he denies it in his brief, it is evident that Clark's real complaint on appeal is that his tendered Instruction A was a "better" instruction than Instruction 7, even though Instruction 7 followed MAI 6th 24.01 and its accompanying Notes on Use to the letter, because Instruction A does not employ the generic phrase "conditions for work," which he says might have confused or misled the jury about the nature of his claim or led it to require him to prove more than was legally necessary to make a submissible case.

Under the circumstances present in this case, we cannot agree. First, the language criticized by Clark was deliberately and carefully chosen by the Missouri Supreme Court Committee on Civil Jury Instructions, and then subsequently approved by the Missouri Supreme Court itself. "[W]e are to assume that 'the special committee carefully considered the precise words to use in each approved instruction in order to provide simple, concise and understandable instructions.'" *State ex rel. Kansas City Power & Light Co. v. Campbell,* 433 S.W.2d 606, 611 (Mo.

App. W.D.1968) (quoting *Brown,* 421 S.W.2d at 257). "It is not necessary for us to justify the decision of the Supreme Court and its instruction committee," *Lindsay,* 649 S.W.2d at 494, particularly here, where it is evident that the reason MAI 6th 24.01 and its Notes on Use specify that the generic expression "conditions for work" be used in the "notice tail" is simplicity. If the "notice tail" had to be customized to incorporate the language of each of the possible combinations of the four specifications of negligence that may be submitted under MAI 6th 24.01, the "notice tail" would become impossibly convoluted and unintelligible.

■ Second, complaints similar to those raised by Clark have been firmly rejected by the appellate courts of this state for more than 25 years. In *State v. Phillips,* 583 S.W.2d 526 (Mo. banc 1979), our Supreme Court admonished all Missouri litigants as follows:

> [I]f we are to have a system of patterned instructions, those patterned instructions must be followed. To invite one unapproved 'improvement' invites more unapproved, nonuniform 'improvements.' Ultimately, the result would be no patterned instructions. Patterned instructions serve to clarify the law as succinctly and clearly as possible. To invite additions, in areas covered by MAI civil or criminal, is to invite confusion.

*Id.* at 530. Similarly, the Missouri Supreme Court Committee on Civil Jury Instructions has long warned its Comment titled "How To Use This Book":

> You may have the ability to improve an instruction in MAI but you do not have the authority to do it. Do not do it. The use of a provided MAI is mandatory. If you think the change of a word or phrase will make it a better instruction,

do not do it. You will be falling into error if you do.

MISSOURI APPROVED JURY INSTRUCTIONS, *supra*, at XLIX. Likewise, while Rule 70.02(b) provides that an instruction in MAI may need to be modified in order "to fairly submit the issues in a particular case," where an approved instruction is applicable, does not violate the substantive law, and is supported by the evidence, "the trial court should not modify it to comport with what the court believes to be a better instruction." *Gorman v. Wal–Mart Stores, Inc.*, 19 S.W.3d 725, 731 (Mo.App. W.D.2000) (internal quotation marks omitted). Therefore, where, as here, an applicable MAI instruction that does not misstate the law and is supported by the evidence at trial is available, neither this court, the trial court, nor a litigant has the duty (or the right) to "improve" it by adding, subtracting, or substituting words or phrases.

Third, Clark has failed to show he was in any way prejudiced by the trial court's refusal to submit Instruction A, as the transcript demonstrates that he was permitted to fully argue MNA's alleged negligence under his "unsafe method" theory and to "flesh out" that specific theory of the case to the jury during closing argument. *Linton v. Mo. Highway & Transp. Comm'n*, 980 S.W.2d 4, 10 (Mo.App. E.D. 1998); *Criswell v. Short*, 70 S.W.3d 592, 595 (Mo.App. S.D.2002).

For all these reasons, we reject Clark's contention in Point I, which is denied.

■ In his second and final point, Clark argues that the trial court abused its discretion and committed reversible error in failing to admit into evidence the text of 49 C.F.R. § 220.49 (which is a federal regulation promulgated by the Department of Transportation's Federal Railroad Administration pursuant to 49 U.S.C. § 20103), as well as the proffered opinion testimony of his retained expert, Charles Culver, to the effect that MNA's method of work for the KCP & L plant job violated that regulation. Clark asserts that the trial court erred because evidence of a violation of an applicable federal regulation by a defendant is relevant, material, and admissible to assist the jury with its determination of whether the defendant was negligent under FELA.

■ In FELA cases tried in state courts, the admission or exclusion of evidence is a procedural matter governed by the law of the forum state. *Cupp*, 138 S.W.3d at 775; *Keith v. Burlington N. R.R. Co.*, 889 S.W.2d 911, 920 (Mo.App. S.D.1994). Thus, the propriety of the trial court's ruling excluding the evidence proffered by Clark "is a matter of procedure which is controlled by state law." *Eickelman v. Ill. Cent. Gulf R.R. Co.*, 714 S.W.2d 611, 616 (Mo.App. E.D.1986). Missouri precedent is clear: "A trial court enjoys considerable discretion in the admission or exclusion of evidence, and, absent clear abuse of discretion, its action will not be grounds for reversal." *State v. Mayes*, 63 S.W.3d 615, 629 (Mo. banc 2001). "An abuse of discretion occurs when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Hancock v. Shook*, 100 S.W.3d 786, 795 (Mo. banc 2003). "If reasonable persons can differ as to the propriety of the trial court's action, then it cannot be said that the trial court abused its discretion." *Id.*

■ "[Federal] regulations offered as evidence of the standard of care owed by a party are competent evidence relevant to the question of negligence." *Giddens v. Kansas City S. Ry. Co.*, 29 S.W.3d 813, 821 (Mo. banc 2000) (internal citations omit-

**674**

ted). However, the proponent of such evidence must "present[ ] sufficient evidence of the relevance and applicability of the ... regulations at issue to allow their admission." *Id.*

In this case, the trial court did not abuse its discretion in refusing to admit into evidence the text of 49 C.F.R. § 220.49 or Culver's opinion testimony that MNA violated it because Clark failed to lay a proper foundation for admission of that evidence. According to Clark's offer of proof, the regulation he sought to introduce into evidence (and about which Culver was prepared to testify) was as follows:

> When radio communication is used in lieu of hand signals in connection with the switching, backing or pushing of a train, engine or car, the employee directing the movement shall give complete instructions or keep in continuous radio contact with the employees receiving the instructions. When backing or pushing a train, engine or cars, the distance of the movement must be specified, and the movement must stop in one-half the remaining distance unless additional instructions are received. If the instructions are not understood or continuous radio contact is not maintained, the movement shall be stopped immediately and may not be resumed until the misunderstanding has been resolved, radio contact has been restored, or communication has been achieved by hand signals or other procedures in accordance with the operating rules of the railroad.

However, this version of 49 C.F.R. § 220.49, which was originally promulgated in 1977 (*see* 42 Fed.Reg. 5,065 (Jan. 27, 1977)), was superseded effective January 4, 1999—more than a year before Clark's accident. *See* 63 Fed.Reg. 47,182 (Sept. 4, 1998). The current version of 49 C.F.R. § 220.49 (titled "Radio communication used in shoving, backing or pushing movements"), which took effect on January 4, 1999, and was in effect at the time of Clark's accident on May 2, 2000, reads as follows:

> When radio communication is used in connection with the shoving, backing or pushing of a train, locomotive, car, or on-track equipment, the employee directing the movement shall specify the distance of the movement, and the movement shall stop in one-half the remaining distance unless additional instructions are received. If the instructions are not understood, the movement shall be stopped immediately and may not be resumed until the misunderstanding has been resolved, radio contact has been restored, or communication has been achieved by hand signals or other procedures in accordance with the operating rules of the railroad.

63 Fed.Reg. 47,198; 49 C.F.R. § 220.49 (2004).

There is no question that the revised version of 49 CFR § 220.49 is substantially and materially different than the one proffered by Clark. Since an inapplicable or non-pertinent federal regulation is both irrelevant and incompetent and therefore inadmissible, *see Giddens,* 29 S.W.3d at 821, the trial court clearly did not abuse its discretion in refusing to admit into evidence the text of the superseded version of 49 C.F.R. § 220.49 or Culver's opinion testimony that MNA violated it.

Moreover, in his offer of proof, Clark also failed to show that the regulation Culver would have accused MNA of violating had anything to do with the work Clark was doing at the time of his motor vehicle accident or that the alleged violation caused or contributed to cause Clark's accident or injury, in whole or in part. There is no evidence in the record that the train to which Clark was assigned to work as

conductor was involved in "switching, backing or pushing of a train, engine or car" at the time of Clark's motor vehicle accident. To the contrary, at the time of the accident, the train was hauling empty coal cars from the KCP & L power plant back to Nevada, as Clark drove the company Jeep over public roads toward Nevada. The only "switching, backing, or pushing of a train, engine or car" involved with the KCP & L plant job Clark was performing on the day of his accident occurred at the KCP & L power plant *before* the train left the power plant to haul empty coal cars back to Nevada. Consequently, Clark's contention would necessarily fail even if the version of 49 C.F.R. § 220.49 upon which he relied had not been superseded. Point denied.

The judgment of the trial court is affirmed.

All concur.