

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| PHILLIP CRISP, | ) | |
| | ) | |
| Appellant, | ) | WD85660 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | |
| MISSOURI SCHOOL FOR THE DEAF, | ) | October 31, 2023 |
| DEPARTMENT OF ELEMENTARY & | ) | |
| SECONDARY EDUCATION, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**Appeal from the Circuit Court of Boone County, Missouri
Honorable Robert Jeffrey Harris, Judge**

**Before Division Two: Janet Sutton, Presiding Judge,
Alok Ahuja, Judge, and Mark D. Pfeiffer, Judge**

Phillip Crisp (Crisp) filed a petition in the Circuit Court of Boone County against the State of Missouri, Missouri School for the Deaf, and the Department of Elementary and Secondary Education (MSD), alleging disability discrimination and retaliation under the Missouri Human Rights Act (MHRA),[1] and wrongful discharge under the Whistleblower's Protection Act. After a trial, the jury found in favor of MSD on all claims. On appeal, Crisp raises four points alleging instructional error. Crisp's points relied on all contend that the trial

---

[1] Section 213.010 *et seq.* All statutory references are to the post-Senate Bill 43 language of the Missouri Human Rights Act.

1

court erred by instructing the jury with two instructions that followed the Missouri Approved Instruction (MAI) 38.08,[2] known as the business judgment instruction. He argues that MAI 38.08 fails to reflect the intended meaning of section 213.101.2 of the MHRA requiring such business judgment instruction, and that the instructions, for various reasons, confused and misdirected the jury and prejudiced him. We affirm.

## Factual and Procedural Background[3]

In October 2017, Crisp applied for, and was hired by, MSD as a custodial supervisor. Crisp had previously worked on the MSD campus as a maintenance worker. In April 2018, a female custodian complained to MSD's superintendent about her supervisor Crisp's behavior, believing it to be unprofessional. She reported that Crisp used profanity, he pointed his fingers at her in an intimidating and accusatory manner, made her feel uncomfortable, and that she felt humiliated by Crisp. MSD did not terminate Crisp's employment at that time, and both Crisp and the female custodian were directed to complete an online employee training development course. The female custodian continued to have issues with Crisp causing her to visit the human resources office, often in tears. The female custodian eventually resigned.

In July 2020, four employees documented complaints about Crisp and presented them to the superintendent. In response, on July 14, 2020, the superintendent assigned an impartial employee to gather information about the situation, to make recommendations, and submit such information to the superintendent. The complaining employees, as well as Crisp, were asked

---

[2] All references to the Missouri Approved Instructions (MAI) are to the Missouri Approved Jury Instructions – Civil (8th ed.) unless otherwise noted.

[3] This Court reviews the evidence and reasonable inferences therefrom in a light most favorable to the jury's verdict, and we disregard evidence to the contrary. *Shuttlewagon, Inc. v. Higgins*, 628 S.W.3d 185, 189 n.1 (Mo. App. W.D. 2021).

general questions about their work environment. A report was completed summarizing what each employee stated, including a recommendation on what action should be taken with respect to Crisp.

Based on the interviews, the impartial investigator determined that Crisp acted in an unprofessional manner, he was insubordinate toward his supervisor and other MSD administrators, he showed favoritism toward male employees, he used intimidation toward his staff, and he retaliated against those who questioned his actions. Crisp denied losing his temper, using profanity, speaking negatively about his supervisor, and talking to his subordinates about other staff. Crisp stated that he treated his staff fairly and equally. The report indicated that Crisp's actions violated the Department of Elementary and Secondary Education's (DESE) conduct standards.

One day later, on July 15, an employee who had been interviewed told the investigator that Crisp had discussed the investigation, violating a confidentiality agreement. Crisp said that he intended to retaliate in the future against a complaining employee by not granting her requested time off for comments Crisp believed she made during the investigation. This information was provided to the superintendent.

After receiving all this information, and believing that Crisp exhibited unacceptable behavior at work, the superintendent recommended to DESE that Crisp either be terminated from his employment at MSD, or be demoted from a supervisory position.

Crisp went to human resources on July 17, 2020, to request a copy of his personnel file. Crisp wanted a copy of his file because he felt that the superintendent was targeting and harassing him because of his "condition." Crisp was unsatisfied with what the contents of his personnel file contained related to the investigation, and he asked who he could contact in "Jeff

3

City" about that, and he also wanted to complain about alleged discrimination. The human resources representative gave Crisp the name and phone number of the DESE human resources coordinator in Jefferson City, Missouri. Crisp told the human resources representative that if the person in Jefferson City, Missouri, could not assist him, he would seek legal counsel. Crisp asked to keep his visit to human resources confidential. The human resources representative told Crisp that she was obligated to inform her supervisors, including the superintendent, that Crisp was there. Crisp did not call the Jefferson City, Missouri, DESE human resources coordinator.

The decision was made to terminate Crisp from his position and the superintendent hand-delivered a termination letter, dated July 22, 2020, to Crisp. The letter notified Crisp of his immediate dismissal from employment, and it provided the following reasons for the dismissal: that Crisp demonstrated improper treatment toward staff, that he was insubordinate with a supervisor's directives, and that he exhibited behavior that was considered abusive toward other employees. The letter also listed examples of this behavior that were discovered during the internal investigation.

In April 2021, Crisp filed a three-count petition against MSD, alleging disability discrimination and retaliation under the MHRA, and wrongful discharge under the Whistleblower's Protection Act. Crisp alleged that during a July 14, 2020, meeting with an administrator he felt targeted and harassed, and that on July 17, 2020, he went to human resources and stated that he felt he was being discriminated against because of his disability. Crisp alleged that after he complained to human resources, he was terminated in retaliation for his complaint. On the whistleblower claim, Crisp alleged that he was a public employee who reported unlawful disability discrimination and his employment was terminated in retaliation for

4

reporting such discrimination to his public employer. Crisp sought actual, compensatory, and punitive damages.

The case proceeded to a jury trial in April 2022. Crisp testified that his disability was a neurological impairment—essential tremors—and it causes him to have tremulous speech and involuntary trembling of his hands, arms, head, and upper extremities. He testified that his voice shook, but that it did not mean he was mad or upset, and that he explained this to his staff. Crisp testified that he sometimes spoke loudly and got close to people in order to be understood, and he used hand gestures like a "coach," and that others could perceive those actions as intimidating. Crisp denied using profanity and denied taking retaliatory action against complaining staff, or that he intended to do so in the future.

At trial, MSD contended that Crisp's firing was proper, justified, and not related to Crisp's disability. The superintendent testified that his recommendation to terminate Crisp was because of the information uncovered during the investigation and from the situation in 2018, and that Crisp's disability did not factor into his decision to terminate Crisp's employment. The superintendent stated that he had worked with people with disabilities for thirty-five years and Crisp's disability had no effect on his decision. The superintendent stated that Crisp going to human resources would not have impacted his decision to terminate Crisp's employment.

MSD proposed that the trial court instruct the jury using a business judgment instruction, which followed pattern instruction MAI 38.08. Crisp objected to MSD's proposed business judgment instruction in a pretrial brief and he objected again at the instruction conference. Crisp objected to this instruction for many reasons, including, *inter alia,* that he believed that MAI 38.08 did not follow section 213.101's intent, it did not follow substantive law, and therefore, the trial court should not use MAI 38.08 to instruct the jury.

5

Crisp tendered Alternate Instruction A for the trial court to give instead as the business judgment instruction, which was based on 8th Circuit Model Jury Instruction 5.02. Crisp's Alternate Instruction A stated: "You may not return a verdict for the plaintiff just because you might disagree with the defendant's decision or believe it to be harsh or unreasonable."

The trial court ruled that it was legally bound to give MAI 38.08, even though it stated it had concerns about the approved form instruction, ultimately concluding that its concerns did not rise to a level that would allow it to depart from MAI. The trial court rejected Crisp's Alternate Instruction A. The trial court, however, modified a section of MSD's proposed language in the 38.08 instruction describing MSD's non-discriminatory business reasons for Crisp's discharge to better align with what was described in his July 22, 2020, termination letter. In modifying the instruction, the trial court changed the word "or" to "and" in the reasons listed for discharge over MSD's objection. [4] Although the instruction was modified at Crisp's request and to his benefit, Crisp advised the trial court that he still believed he would be "prejudiced" by the instruction, and the trial court responded that it did not believe Crisp was waiving any objection to the instruction.

---

[4] The proposed business judgment instruction originally read as follows:

> Your verdict must be for defendant if you believe defendant discharged plaintiff because of improper treatment towards staff, being insubordinate with directives given by a supervisor, *or* exhibiting behavior that is considered abusive toward other employees as an exercise of sound business judgment without regard to plaintiff's disability even if you disagree with such decision or believe it to be harsh.

(Emphasis added).

6

The jury was given the following business judgment instruction, over Crisp's objection, in Instructions 9 and 14, as follows:

> Your verdict must be for defendant if you believe defendant discharged plaintiff because of improper treatment towards staff, being insubordinate with directives given by a supervisor, *and* exhibiting behavior that is considered abusive toward other employees as an exercise of sound business judgment without regard to plaintiff's disability even if you disagree with such decision or believe it to be harsh.

(Emphasis added). The trial court gave the business judgment instructions directly after each verdict director for Crisp's claims of disability discrimination and retaliation.

At the close of the evidence, the jury returned a verdict in favor of MSD on all of Crisp's claims. Crisp filed a motion for new trial, renewing his objections that the trial court erred in giving the business judgment instructions in Instructions 9 and 14 and in refusing Crisp's proffered alternate instruction. The trial court denied Crisp's motion for new trial.

Crisp appeals.

## Standard of Review

Whether a jury was properly instructed is a question of law that we review *de novo*. *Hervey v. Missouri Dept. of Corrections*, 379 S.W.3d 156, 159 (Mo. banc 2012). "The trial court's refusal to give a party's proffered instruction is reviewed *de novo*, evaluating whether the instructions were supported by the evidence and the law." *Cluck v. Union Pac. R.R. Co.*, 367 S.W.3d 25, 32 (Mo. banc 2012). Rule 70.02(a) compels this standard of review, which provides that jury instructions "shall be given or refused by the court according to the law and the evidence in the case." *Church v. CNH Indus. Am., LLC*, 671 S.W.3d 829, 837 (Mo. App. W.D. 2023) (quoting *Marion v. Marcus*, 199 S.W.3d 887, 892 (Mo. App. W.D. 2006)).

To reverse a jury verdict on the ground of instructional error, the party challenging the instruction must show that: (1) the instruction at issue misled, misdirected, or confused the jury;

7

and (2) prejudice resulted from the instructional error. *SKMDV Holdings, Inc. v. Green Jacobson*, *P.C.*, 494 S.W.3d 537, 553 (Mo. App. E.D. 2016).

## Legal Analysis

In four points on appeal, Crisp argues that the trial court erred in giving the business judgment instruction as worded in Instructions 9 and 14 on Crisp's disability discrimination and retaliation claims. In Crisp's first and third points, he argues the trial court erred in giving Instructions 9 and 14, patterned after MAI 38.08, the business judgment instruction, because MAI 38.08 failed to reflect section 213.101.2's intended meaning requiring such business judgment instruction.

Crisp's second and fourth points also challenge the business judgment instruction given in Instructions 9 and 14, alleging these confused and misdirected the jury. Specifically, Crisp asserts that the instructions confused and misdirected the jury for several reasons: (1) the instructions were affirmative converse instructions with detailed evidentiary facts violating Rule 70.02 without any paragraph or conjunctive language; (2) the instructions conflicted with the required "motivating factor" language of the verdict directors; (3) both instructions submitted undefined legal conclusions not reflected in the MHRA; (4) the instructions conflicted with MSD's obligation not to discriminate or retaliate against a disabled employee.

Crisp's second and fourth points are impermissibly multifarious in violation of Rule 84.04(d)(1). Rule 84.04 is violated if a point "groups together multiple, independent claims rather than a single claim of error, and a multifarious point is subject to dismissal." *Kirk v. State*, 520 S.W.3d 443, 450 n.3 (Mo. banc 2017). "Separate issues should be stated in separate points relied on." *Hale v. Burlington N. & Santa Fe Ry. Co.*, 638 S.W.3d 49, 61 (Mo. App. S.D. 2021) (quoting *Wheeler v. McDonnell Douglas Corp.*, 999 S.W.2d 279, 283 n.2 (Mo. App. E.D.

8

1999)).  This is so because "separate and distinct inquiries . . . require discrete legal analyses." *Lollar v. Lollar*, 609 S.W.3d 41, 45 n.4 (Mo. banc 2020).  A multifarious point on appeal preserves nothing for appellate review.  *Kirk*, 520 S.W.3d at 450 n.3.

In our discretion, we may review all, some, or none of a multifarious point relied on.  *See, e.g.*, *Fowler v. Missouri Sheriffs' Retirement Sys.*, 623 S.W.3d 578, 582-83 (Mo. banc 2021) (electing to review none of the claims in a multifarious point relied on); *Griffitts v. Old Republic Ins. Co.*, 550 S.W.3d 474, 478 (Mo. banc 2018) (electing to review only the first of two claims in a multifarious point relied on).

While the single broad issue is the same—whether the trial court erred by instructing the jury with Instructions 9 and 14 that followed MAI 38.08—Crisp includes at least four different legal reasons in his second and fourth points about how each confused and misdirected the jury, and as such, these points are multifarious.  *See Cedar Cnty. Comm'n v. Governor Michael Parson*, 661 S.W.3d 766, 772 n.6 (Mo. banc 2023) (concluding that a point relied on asserting two separate and independent challenges to legislation under the Missouri Constitution was multifarious, violated Rule 84.04, and preserved nothing for review).  Though we may choose to not address a multifarious point, we prefer to decide cases on their merits.  We may exercise our discretion to address the merits of each claim in a multifarious point relied on when we can readily discern and separate the independent claims of error asserted in the point.  *Cityview Real Estate Servs., LLC v. K.C. Auto Panel, Inc.*, 576 S.W.3d 187, 191 (Mo. App. W.D. 2019).

We therefore exercise our discretion to address the merits of the deficient points on appeal and we will separate Crisp's "contentions, as best we can discern them, and respond to each one individually." *Wennihan v. Wennihan*, 452 S.W.3d 723, 728 (Mo. App. W.D. 2015) (citation omitted).

9

***Points One and Three***

In Crisp's first and third points, he argues the trial court erred in giving Instructions 9 and 14, patterned after MAI 38.08, because he contends that MAI 38.08 fails to reflect the intended meaning of section 213.101.2 requiring the jury be given a business judgment instruction. Crisp argues that the trial court erred by rejecting his proffered Alternate Instruction A, which was based on 8th Circuit Model Instruction 5.02.

Generally, "[w]henever Missouri Approved Instructions contains an instruction applicable in a particular case that the appropriate party requests or the court decides to submit, such instruction shall be given to the exclusion of any other instructions on the same subject." Rule 70.02(b); *See also Hervey*, 379 S.W.3d at 159; *Syn, Inc. v. Beebe*, 200 S.W.3d 122, 128 (Mo. App. W.D. 2006) ("The law is well-settled that where an MAI instruction applies to the case, the use of such instruction is mandatory."). "And, since 'MAI instructions, promulgated and approved by the Supreme Court, are authoritative if applicable to the factual situation . . . this [C]ourt, as was the trial court, is bound by them as surely as it is bound by Supreme Court cases and rules.'" *Clark v. Missouri & N. Arkansas R.R. Co.*, 157 S.W.3d 665, 671 (Mo. App. W.D. 2004) (quoting *Lindsay v. McMilian,* 649 S.W.2d 491, 493–94 (Mo. App. W.D. 1983)).

"Rule 70.02 further provides that departure from an applicable MAI constitutes error, its prejudicial effect to be judicially determined." *Hervey,* 379 S.W.3d at 159. If, however, a particular MAI does not accurately state or it conflicts with the substantive law, it should not be given. *See id.*; *Rhoden v. Missouri Delta Med. Ctr.*, 621 S.W.3d 469, 480 (Mo. banc 2021); *Clark*, 157 S.W.3d at 671 ("If an instruction following MAI conflicts with the substantive law, any court should decline to follow MAI."). We consider and read all the instructions together

when assessing any claim of error. *See SKMDV Holdings, Inc.*, 494 S.W.3d at 554; *Yoos v. Jewish Hosp. of St. Louis*, 645 S.W.2d 177, 189 (Mo. App. E.D. 1982).

A business judgment instruction and its use in an MHRA case was addressed in 2006 in *McBryde v. Ritenour School District*, 207 S.W.3d 162 (Mo. App. E.D. 2006). In *McBryde*, the Eastern District of this Court held that a trial court did not commit reversible error by failing to submit a business judgment instruction to a jury. *Id*. at 171. The defendant offered a business judgment instruction at trial that referenced an Eight Circuit Model Civil Jury Instruction, which the trial court refused to give. *Id.* at 170-71. On appeal, the defendant argued that Missouri courts should follow the Eight Circuit's view that "in employment discrimination cases, a business judgment instruction is crucial to a fair presentation of the case, and the . . . court must offer it whenever it is proffered by the defendant." *Id.* at 171. The Court disagreed, stating that "[i]f the Missouri Supreme Court had wished to adopt the language of the Eighth Circuit's model jury instruction regarding the business judgment instruction, it could have done so when it drafted and subsequently adopted MAI jury instructions specifically addressing the MHRA." *Id.* The Court found that it was not error for the trial court to refuse the defendant's business judgment instruction. *Id.*

In 2017, the Missouri General Assembly significantly amended the MHRA through Senate Bill 43 (SB 43). The General Assembly also abrogated all Missouri approved jury instructions specifically addressing civil actions brought under chapter 213 in effect before August 28, 2017. § 213.101.6. Section 213.101.2, amended as part of SB 43, also provided the following:

> The general assembly hereby expressly abrogates the case of *McBryde v. Ritenour School District*, 207 S.W.3d 162 (Mo. App. E.D. 2006), and its progeny as it relates to the necessity and appropriateness of the issuance of a business judgment

11

instruction. In all civil actions brought under this chapter, a jury shall be given an instruction expressing the business judgment rule.

§ 213.101.2.

After this, in May 2018, the Supreme Court of Missouri adopted and approved new and revised civil instructions, notes on use, committee comments, and historical notes for use in employment discrimination cases. The revised and new instructions became mandatory on January 1, 2019. MAI 38.08, titled "[2018 New] Missouri Human Rights Act—Business Judgment Rule (for actions accruing on or after August 28, 2017)" was one of the new instructions approved by the Missouri Supreme Court for use in cases alleging a cause of action under chapter 213, the MHRA. MAI 38.08 provides the following:

> Your verdict must be for defendant if you believe defendant (*here insert the alleged discriminatory act submitted in plaintiff's verdict directing instruction such as "failed to hire," "discharged," or other act within the scope of §§ 213.055, RSMo*) plaintiff because (*here insert non-discriminatory business reason for defendant's action*) as an exercise of sound business judgment without regard to plaintiff's (*here insert the applicable protected classification submitted by plaintiff such as race, color, religion, national origin, etc.*) even if you disagree with such decision or believe it to be harsh.

(Footnotes omitted).

Crisp alleged disability discrimination and retaliation under the MHRA, and he alleged the unlawful actions took place after August 28, 2017.[5] Therefore, the new instructions, including MAI 38.08, applied to Crisp's case.

We look to the statutes that govern an MHRA discrimination claim, and specifically section 213.101.2, as it relates to Crisp's claims on appeal related to the business judgment instructional errors as the substantive law. *See Hervey*, 379 S.W.3d at 159 (stating that "[t]he source of the substantive law in [an employment discrimination action under the MHRA] is the

---

[5] Crisp also alleged a non-MHRA claim that he was wrongfully discharged for whistleblowing.

statutes that govern an MHRA discrimination claim.") As we have already stated, section 213.101.2 provides that in civil actions brought under chapter 213, "a jury shall be given an instruction expressing the business judgment rule." Crisp argues that Instructions 9 and 14 failed to follow the intent of section 213.101.2 because those instructions were not "instruction[s] expressing the business judgment instruction," but instead were improperly expressed affirmative converse defenses that were not based on statutory language or other precedent intended by the MHRA.

Crisp argues that when the Missouri Legislature enacted section 213.101.2, it did not intend for jurors to be instructed with the language of the business judgment instruction subsequently adopted and approved in MAI 38.08, from which Instructions 9 and 14 were patterned. Crisp contends the trial court should have instructed the jury using his Alternate Instruction A, which was based on 8th Circuit Model Instruction 5.02.

Crisp argues the trial court should have used this alternative instruction because it was the only existing "business judgment rule" in employment discrimination jurisprudence as *McBryde* expressly considered a version of the 8th Circuit business judgment model instruction before holding that the trial court did not commit reversible error by failing to submit it to the jury. In somewhat confusing reasoning, Crisp theorizes that the Missouri Legislature's purpose was aimed at authorizing and sanctioning the 8th Circuit business judgment model instruction when the Legislature specifically abrogated *McBryde*'s ruling in section 213.101.2. Crisp asserts that 8th Circuit Model Instruction 5.02 is superior to MAI 38.08 as it is a general instruction without factual assertions, it would not be repeated for each case theory, and it does not use affirmative converse language.

13

We are unpersuaded by Crisp's arguments. "If a non-MAI instruction is proffered, the party offering the non-approved instruction must prove that the MAI instructions submitted to the jury misstate the law." *State ex rel. Missouri Highway and Transp. Comm'n v. Dale*, 309 S.W.3d 380, 385 (Mo. App. S.D. 2010) (internal quotation marks omitted). Crisp has not shown that MAI 38.08 misstates the law.

Section 213.101.2 states that a jury shall be given an instruction expressing the business judgment rule. MAI 38.08 does just that. The MAI itself is titled "38.08 [2018 New] Missouri Human Rights Act—Business Judgment Rule (for actions accruing on or after August 28, 2017)." Instructions 9 and 14 followed MAI 38.08 and the Notes on Use. The trial court was bound to instruct the jury using MAI 38.08 and "it is not an error for the trial court to offer an MAI instruction that is directly applicable." *Wickham v. Hummel*, 659 S.W.3d 345, 365 (Mo. App. W.D. 2022).

"[T]here is a plethora of law which states that instructions should not be unnecessarily modified and trial courts should utilize MAI whenever possible." *Dale*, 309 S.W.3d at 386. Therefore, the trial court did not err in refusing Crisp's proffered non-MAI instruction, Alternate Instruction A. The trial court would have committed error in this circumstance had it given Crisp's Alternate Instruction A instead of Instructions 9 and 14 that were patterned after MAI 38.08. *See Dale*, 309 S.W.3d at 386 ("[T]he giving [of] a non-MAI instruction instead of an applicable MAI instruction is presumed to be reversible error.").

"The law is well-settled that where an MAI instruction applies to the case, the use of such instruction is mandatory." *Syn, Inc.*, 200 S.W.3d at 128. "In insisting that the appropriate MAI be followed, the Supreme Court of Missouri has explained that use of the MAI is key to the

14

integrity of the court system." *Id.* (citing *Brown v. St. Louis Pub. Serv. Co.,* 421 S.W.2d 255, 258 (Mo. banc 1967)). The Supreme Court of Missouri has cautioned litigants:

> "[I]f we are to have a system of patterned instructions, those patterned instructions must be followed. To invite one unapproved 'improvement' invites more unapproved, nonuniform 'improvements.' Ultimately, the result would be no patterned instructions. Patterned instructions serve to clarify the law as succinctly and clearly as possible. To invite additions, in areas covered by MAI civil or criminal, is to invite confusion."

*Clark*, 157 S.W.3d at 672 (quoting *State v. Phillips*, 583 S.W.2d 526, 530 (Mo. banc 1979)). We do not accept the premise that the 8th Circuit's model business judgment instruction is superior to MAI 38.08. Sporadic use of the 8th Circuit's model business judgment instruction instead of MAI 38.08 would violate the "system of instruction such as MAI [that] is inherently standardized and inflexible [such that] [i]f this [C]ourt is to make this system work, and preserve its integrity and very existence, we must insist that mandatory directions be followed and that the pattern instructions be used as written." *Brown*, 421 S.W.2d at 258.

Crisp's argument presumes that the General Assembly's 2017 amendments to section 213.101.2 were intended to adopt the precise wording of 8th Circuit Model Instruction 5.02, rather than to mandate the use of a "business judgment rule" instruction generally. We are not persuaded. The amendments to section 213.101 cite to numerous court decisions, including *McBryde.* The Legislature was plainly capable of citing specifically to 8th Circuit Model Instruction 5.02 if it chose to do so; or it could have quoted the specific language of the model instruction (which is brief) if it had intended to mandate the use of that precise language.

Crisp argues that the General Assembly *must* have intended to adopt the specific wording of the 8th Circuit model instruction, because "[t]he only existing 'business judgment rule' in employment discrimination jurisprudence, and one expressly referred to in § 213.101.2, was 8th Circuit Model Instruction 5.52, expressly at issue in *McBryde*, 207 S.W.3d at 170." That

15

statement is inaccurate. *McBryde* itself cites to two cases from other federal Circuits, in which different language was proposed for "business judgment rule" instructions in employment discrimination cases.[6] Further, at least one case from the 8th Circuit endorsed instructional language reflecting the "business judgment rule" that was different from the Model Instruction.[7]

---

[6] *See Julian v. City of Houston*, 314 F.3d 721, 727 (5th Cir. 2002), in which the employer proposed the following instruction:

> You are instructed that an employer is free to direct its work force as it considers best to meet its objectives. You are not being asked to judge whether acts by the Defendant were wise, whether they represented good management, or whether you would have handled matters in a different fashion. The City is free to use its own judgment, so long as it did not act with the intent to discriminate against Mr. Julian because of his age.

*See also Kelley v. Airborne Freight Corp.*, 140 F.3d 335, 350 n.4 (1st Cir. 1998), in which the employer proposed this "business judgment rule" instruction:

> Mr. Kelley must show more than that Airborne made an unwise business decision, unnecessary personnel move, or acted arbitrarily . . . Good faith errors in an employee's business judgment are not, standing alone, evidence of age discrimination.

[7] In *Walker v. AT & T Techs.*, 995 F.2d 846 (8th Cir. 1993), the Court held that the following instruction accurately stated "the substantive law that an employer has the right to make business decisions . . . for good reason, bad reason, or no reason at all, absent intentional age discrimination":

> It is not unlawful for an employer to assign work to an employee, or require that employee to meet certain performance standards or expectations where the action is based on factors other than age. It is not unlawful for an employer to discriminate against an employee because of the employer's view of the employee's capabilities.
>
> . . .
>
> Put another way, the basic principle is that an employer has the right to assign work to an employee, to change an employee's duties, to refuse to assign a particular job to an employee or even to discharge an employee for good reason, bad reason, or no reason at all absent intentional age discrimination . . . .

*Id.* at 848, 849-50.

Moreover, Crisp's argument ignores that the most common use of "the business judgment rule" in Missouri law involves the personal liability of corporate officers or directors for actions taken on the corporation's behalf.  The most common formulation of "the business judgment rule" in that context uses terminology similar to MAI 38.08.[8]

The trial court properly instructed the jury with Instructions 9 and 14, which were patterned after MAI 38.08, because MAI 38.08 was applicable to the case and it did not misstate the law.

Points one and three are denied.

### *Points Two and Four*

Next, we turn to Crisp's arguments in his second and fourth points, that the business judgment instruction given in Instructions 9 and 14 confused and misdirected the jury for several independent reasons.  As we have already said, these points are multifarious.  We exercise our discretion to provide *ex gratia* review of Crisp's arguments in these points and will separate Crisp's contentions as best as we can discern them and respond to each individually.

---

[8]  *See S.M.S. v. J.B.S.*, 588 S.W.3d 473 (Mo. App. E.D. 2019):

> The business judgment rule protects the directors and officers of a corporation from liability for *intra vires* decisions within their authority and made in good faith, uninfluenced by any consideration other than an honest belief that the action promotes the corporation's best interest.  The rule vests the directors and shareholders with wide latitude in making judgments that affect the running of the corporation.  The rule precludes courts from interfering with the decisions of corporate officers and directors absent a showing of fraud, illegal conduct, an *ultra vires* act, or an irrational business judgment.

*Id.* at 499 (quoting *Virgil Kirchoff Revocable Trust v. Moto, Inc.,* 482 S.W.3d 834, 841-42 (Mo. App. E.D. 2016)).

First, Crisp asserts that the instructions confused and misdirected the jury because the instructions were affirmative converse instructions with detailed evidentiary facts violating Rule 70.02 without any paragraph or conjunctive language.

"Affirmative converse instructions are described in MAI 33.01 and 33.05." *Zerpa v. XPO Logistics Freight, Inc.*, 662 S.W.3d 1, 6 (Mo. App. W.D. 2022). "An affirmative converse instruction begins with 'Your verdict must be for defendant if you believe' followed by a hypothesized ultimate issue which, if true, would defeat plaintiff's claim." *Intertel, Inc., v. Sedgwick Claims Mgmt. Serv. Inc.*, 204 S.W.3d 183, 208 (Mo. App. E.D. 2006). "The facts hypothesized in an affirmative converse instruction must be sufficient in law to defeat the plaintiff's claim." *Id.* at 209. "A defendant may submit his theory of the case through the use of an affirmative converse instruction." *Id.* The defendant, however, "must then produce independent evidence supporting those facts submitted in the instruction and the facts must be sufficient in law to defeat plaintiff's claim." *Id.*

> The affirmative converse instruction is not to be used merely as a means of conversing, in different language, the very same issue submitted in the verdict director instruction . . . An affirmative converse instruction is appropriate where the verdict director assumes as true or omits a disputed ultimate issue . . . An affirmative converse instruction may be appropriate where it is used by a defendant to submit an ultimate issue that was erroneously excluded from plaintiff's verdict director . . . Affirmative converse instructions are suspect unless the converse submits a contested ultimate issue that was omitted from or assumed as true in the verdict director.

*Zerpa*, 662 S.W.3d at 6 (internal quotation marks and citations omitted).

Instructions 9 and 14 begin as affirmative converse instructions, with the language, "Your verdict must be for defendant if you believe . . . ." This language is then followed by a hypothesized ultimate issue which, if true, would defeat Crisp's claims—that there were several non-discriminatory business reasons for MSD's discharge of Crisp and that the decision to

18

discharge Crisp was done as an exercise of sound business judgment and without regard to Crisp's disability.

We acknowledge that "Missouri [c]ourts generally disfavor affirmative converse instructions." *Medley v. Joyce Meyer Ministries, Inc.*, 460 S.W.3d 490, 500 n.8 (Mo. App. E.D. 2015). In *Hiers v. Lemley*, the Supreme Court of Missouri set forth the following reasons why:

> Such instruction, like the true converse, is an accessory and unnecessary to the instruction package. An affirmative converse instruction tends to resemble a prohibited 'sole cause' instruction. The affirmative converse instruction is often merely a resubmission of the issues found in the verdict director. It requires evidentiary support to justify its submission. In addition, it has the propensity to violate the general premise of the approved instruction format by including unnecessary evidentiary details instead of ultimate issues. Rule 70.02(a).

834 S.W.2d 729, 735–36 (Mo. banc 1992). Crisp argues MAI 38.08's business judgment instruction assumes, rather than hypothesizes, an issue of ultimate fact, and does not make clear that each element is in dispute. We disagree.

Instructions 9 and 14 did not improperly assume as true any disputed fact. Although affirmative converse instructions have been disfavored by Missouri courts and their use can come with risk, affirmative converse instructions are approved by the MAI and are appropriate in certain situations. *See Douglas v. St. Louis Cold Drawn, Inc.*, 439 S.W.3d 775, 779 n.5 (Mo. App. E.D. 2014). The use of MAI 38.08 was appropriate in this case as the verdict directors omitted a disputed ultimate issue—that there were legitimate reasons for MSD to discharge Crisp from employment and that those reasons were not related to his disability.

Instructions 9 and 14, patterned after MAI 38.08, did not merely resubmit the issues found in the verdict directors and the instructions did not violate the general premise of the approved instruction format by including unnecessary evidentiary details instead of ultimate issues. Instructions 9 and 14 were not improper affirmative converse instructions and the trial court did not err in giving them.

19

Next, we address Crisp's contention that Instructions 9 and 14 confused or misdirected the jury because the instructions contained detailed evidentiary facts in violation of Rule 70.02 without paragraph format or conjunctive language and he was prejudiced because the jury could not readily understand the instructions. Crisp argues that the format allowed the jury to assume that the stated reasons for Crisp's discharge as set forth in the July 22, 2020, termination letter were each true without any opportunity to find to the contrary.

> It is well settled in Missouri that before reversible error can be predicated on the giving of a MAI, the complaining party need show that, under all the evidence, the instruction was a misdirection to the jury resulting in prejudicial error. To this end, therefore, all the instructions are to be read together as a whole, and as being given to and considered by jurors of reasonable intelligence.

*Yoos*, 645 S.W.2d at 189-90 (internal citations omitted).

As we have already said, Instructions 9 and 14 followed MAI 38.08 and its accompanying Notes on Use. The form of the instruction and the language criticized by Crisp "was deliberately and carefully chosen by the Missouri Supreme Court Committee on Civil Jury Instructions, and then subsequently approved by the Missouri Supreme Court itself." *Clark*, 157 S.W.3d at 672. "[W]e are to assume that the special committee carefully considered the precise words to use in each approved instruction in order to provide simple, concise and understandable instructions." *Id.* (internal quotation marks omitted) (quoting *State ex rel. Kansas City Power & Light Co. v. Campbell,* 433 S.W.2d 606, 611 (Mo. App. W.D. 1968)). We must "credit jurors with ordinary intelligence, common sense, and average understanding of the English language," *Williams v. Daus*, 114 S.W.3d 351, 370 (Mo. App. S.D. 2003) (citation omitted), when we review jury instructions and we do not believe that the jury was confused or misdirected because of the format of Instructions 9 and 14.

This Court, as well as the trial court, is bound by the approved MAI, and MAI 38.08 did not require paragraph form. Further, the trial court modified Instructions 9 and 14 to Crisp's

20

benefit when it changed MSD's proposed language in the section of its 38.08 instruction describing MSD's non-discriminatory business reasons for Crisp's discharge to better align with what was described in the July 22, 2020, termination letter, by changing the word "or" to "and" in the reasons listed for discharge.

Further, the format of Instructions 9 and 14 did not require the jury to assume that the stated reasons for Crisp's discharge set forth in the July 22, 2020, termination letter were each true. The instructions clearly stated jurors could only return a verdict for MSD if they determined MSD discharged Crisp because of the stated reasons as an exercise of sound business judgment and without regard to Crisp's disability. Jurors could believe or disbelieve the evidence presented on that issue. Additionally, "[i]n testing the legal sufficiency of instructions, a court 'should not be hypertechnical in requiring grammatical perfection, the use of certain words or phrases, or any particular arrangement or form of language . . . .'" *McDowell v. Southwestern Bell Tel. Co.*, 546 S.W.2d 160, 171 (Mo. App. 1976) (quoting *Bartleman v. Humphrey*, 441 S.W.2d 335, 348 (Mo. 1969)). We do not believe that a lack of paragraph format prejudiced Crisp when we credit jurors, as we must, as having ordinary intelligence and common sense and we conclude that Crisp has not established confusion or misdirection.

Next, we address Crisp's argument that Instructions 9 and 14 confused and misdirected the jury in that the instructions conflicted with the required "motivating factor" language of the verdict directors for the disability discrimination and retaliation claims.

The verdict director for Crisp's disability discrimination claim, Instruction 8, read as follows:

> On the claim of plaintiff for compensatory damages for disability discrimination, your verdict must be for plaintiff if you believe:
> First, plaintiff has a physical impairment that substantially limits one or more of plaintiff's major life activities, and

21

Second, such impairment would not interfere with performing the job in question if provided reasonable accommodation, and
Third, defendant discharged plaintiff's employment, and
Fourth, such disability actually played a role in and had a determinative influence on such action, and
Fifth, such conduct directly caused damage to plaintiff.

The verdict director for Crisp's retaliation claim, Instruction 13, read as follows:

On the claim of plaintiff for compensatory damages for retaliation, your verdict must be for plaintiff if you believe:
First, plaintiff reported to defendant his reasonable, good faith belief that he was being discriminated against because of his disability, and
Second, defendant discharged plaintiff, and
Third, plaintiff's report mentioned in paragraph First actually played a role in and had a determinative influence on such discharge, and
Fourth, such conduct directly caused damage to plaintiff.

The verdict directors were not modified by adding affirmative defense tails, which would refer the jury directly from the verdict directors to Instructions 9 and 14, which, as we discussed *supra*, were affirmative converse instructions.[9]

Motivating factor is defined in section 213.010(19) as "the employee's protected classification actually played a role in the adverse action or decision and had a determinative influence on the adverse decision or action." As part of the 2017 amendments to the MHRA, the "contributing factor" standard was changed to a "motivating factor" standard. *Bracely-Mosley v.*

---

[9] We note that unlike a true converse instruction, affirmative converse instructions require "that the verdict director contain a phrase, commonly referred to as an 'affirmative defense' tail, which refers the jury directly from the verdict director to the affirmative converse instruction." *Intertel, Inc., v. Sedgwick Claims Mgmt. Serv. Inc.*, 204 S.W.3d 183, 208-209 (Mo. App. E.D. 2006). *See also Hollis v. Poplar Bluff Reg'l Med. Ctr., LLC*, 674 S.W.3d 76, 85 n.1 (Mo. App. S.D. 2023) ("The MAI 33.05(1) Notes on Use direct that where an affirmative converse instruction is properly submitted, the verdict director is modified by adding an affirmative defense tail, which refers the jury directly from the verdict director to the affirmative converse instruction.).

Here, neither verdict director for Crisp's claims for disability discrimination nor retaliation contained such affirmative defense tail. Crisp did not raise this issue before the trial court in his motion for new trial and has not raised this on appeal so we do not address it further.

*Hunter Eng'g Co.*, 662 S.W.3d 806, 815 n.10 (Mo. App. E.D. 2023). As part of his argument on this issue, Crisp points out that the old lawful justification instruction, MAI 38.02,[10] for actions accruing before August 28, 2017, and for which a new post-SB 43 version was not promulgated and approved, contains the contributing factor language and MAI 38.08 does not contain the parallel motivating factor language.

As we have already said, both the form of the instructions and the language criticized by Crisp were "deliberately and carefully chosen by the Missouri Supreme Court Committee on Civil Jury Instructions, and then subsequently approved by the Missouri Supreme Court itself." *Clark*, 157 S.W.3d at 672. "[W]e are to assume that the special committee carefully considered the precise words to use in each approved instruction in order to provide simple, concise and understandable instructions." *Id.* (internal quotation marks omitted) (quoting *Kansas City Power & Light Co.,* 433 S.W.2d at 611). The jury was instructed on motivating factor in the verdict director. We do not believe the jury was misdirected on the issue of whether Crisp's disability actually played a role in and had a determinative influence on his discharge.

Crisp also argues that Instruction 9 omitted the consideration of reasonable accommodations, which conflicts with the verdict director on the disability discrimination claim. Crisp argues that the jury was misdirected in that Instruction 9 allowed the jury to erroneously

---

[10] MAI 38.02 provides the following:

Your verdict must be for defendant if you believe:
First, defendant (*here insert alleged discriminatory act submitted in plaintiff's verdict directing instruction such as "failed to hire," "discharged" or other act within the scope of* § 213.055, RSMo) plaintiff because (*here set forth the alleged lawful reason such action was taken*), and
Second, in so doing (*here insert the protected classification submitted by plaintiff, such as race, color, religion, national origin, etc.*) was not a contributing factor.

23

believe MSD could disregard and act "without regard to" Crisp's disability and the reasonable accommodations necessary for Crisp to perform his job duties. We disagree. Instruction 9 did not instruct the jury that MSD could disregard Crisp's disability.

While Crisp would prefer additional language related to reasonable accommodations included as part of a business judgment instruction, this is not the language that the Supreme Court of Missouri carefully considered and approved as part of MAI 38.08.

Instructions 9 and 14 did not conflict with MSD'S obligation not to discriminate or retaliate against an employee, and MAI 38.08's language does not, as Crisp contends, rewrite the MHRA. Instructions 9 and 14 were properly given in that they applied to the facts of the case, they followed the pattern MAI 38.08, which itself did not misstate or conflict with substantive law, and therefore the use of MAI was mandatory in this situation.

Points two and four are denied.

### Conclusion

The judgment of the circuit court is affirmed.

Janet Sutton, Presiding Judge

Alok Ahuja, Judge and Mark D. Pfeiffer, Judge concur.

24